**Arthur HAGAN and Stonewall Insurance Company**

v.

**DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA, in personam.**

**Civ. A. No. 73–110.**

United States District Court, M. D. Louisiana.

Dec. 11, 1973.

James A. George, George & Moore, Ltd., Baton Rouge, La. for plaintiffs.

Nigel E. Rafferty, Walter W. Christy, John Blackwell, Monroe & Lemann, New Orleans, La., for Louisiana Power & Light Co.

Norman L. Sisson, Robert J. Jones, Ronald R. Thompson, Dept. of Highways, State of Louisiana, Baton Rouge, La., for the Dept. of Highways, State of Louisiana.

E. GORDON WEST, District Judge:

In the early morning hours of June 26, 1972, the shrimp trawler "CAPT. DUTCH" was proceeding in a northerly direction on the navigable waterway in Louisiana known as Bayou Lafourche. It was captained by Paul Hagan, the son of the owner of the vessel, Arthur Hagan, plaintiff herein.

The Department of Highways, State of Louisiana, owns and operates a drawbridge over Bayou Lafourche at Leeville, Louisiana. At the time of the incident in question, the bridge was being tendered by one Jules P. Savoie, an employee of the Louisiana Department of Highways.

As the "CAPT. DUTCH" approached the drawbridge, the captain began a series of three-blast signals on the fog horn of the vessel, as required when approaching a bridge of this type. When the signals were first given, the vessel's estimated speed was six knots. As the signals were continued and the bridge failed to open, the vessel's speed was cut to approximately 2 to 3 knots, about the same speed as the current of the tide which was moving in the same direction as the vessel. After blowing an estimated eight series of blasts without receiving any return warning signal from the bridge, and seeing that the bridge in all probability would not open, Captain Hagan attempted to put the vessel in reverse to avoid a collision. Unfortunately, Captain Hagan immediately discovered that he had no reverse power, apparently due to the shearing of a pin on the propeller shaft, with the resultant loss of the use of the propeller and all power in the vessel, both forward and reverse.

As the tide carried the vessel toward the bridge, Captain Hagan tried to steer the boat toward the bank, attempting to avoid a collision with the bridge. He was unsuccessful. The trawler hit bottom just prior to hitting a power cable near the bridge, and finally collided with the bridge itself, becoming pinned underneath the bridge by the tide current. Captain Hagan stated in his deposition that after becoming pinned under the bridge, he continued with his horn for about 15 to 20 minutes before the lights came on in the bridge tender's shack and the bridge began raising and lowering. After the third raising of the bridge, the bridge tender descended from his position atop the bridge to where he could see the vessel caught beneath the bridge. He returned to his shack and telephoned for assistance. After daylight, the "CAPT. DUTCH" was freed from its position by the changing current of the

tide and towed to Golden Meadow by another shrimp boat. The damages to the vessel itself directly attributable to the impact with the bridge and hitting bottom amounted to something over $8,000. Additionally, damages of $723.17 were sustained by Louisiana Power and Light, intervenor herein, in connection with the collision of the trawler with the power cable. This latter amount was stipulated to by all parties, and apparently no one questions the amount or cause of damages to the cable.

Further, the plaintiffs, Arthur Hagan, and Stonewall Insurance Company, insurer of the "CAPT. DUTCH," contend that over $5,000 worth of engine damage caused by the rupture of a high pressure water hose on August 4, 1972, resulting in extensive damage to the engine is directly attributable to the June 26, 1972 incident. The basis for this claim is their contention that in Captain Hagan's efforts to reverse the engines and avoid a collision with the bridge as well as to extricate himself from his position underneath the bridge, the diesel engine became a runaway engine, causing the boiling water to damage the water hose to the point where it later failed. This boiling allegedly caused the hose to rupture on August 4, 1972, allowing all of the cooling water to escape from the engine too fast for the alarm to go off, and causing the extensive engine damage complained of.

Finally, Arthur Hagan asks for over $7,000 in damages for himself including the deductible amount of the insurance coverage on the vessel's engine, loss of profit caused by the collision and also the subsequent engine damage, and personal expenses incurred in connection with having the boat repaired.

The defendant, Department of Highways, State of Louisiana, concedes that its bridge tender failed to give a warning signal that the bridge would not or could not open in time for the passage of the "CAPT. DUTCH." However, the defendant, in an attempt to mitigate damages, contends that the "CAPT. DUTCH" was unseaworthy and that this condition directly contributed to the collision. With this contention the Court agrees. Captain Hagan himself admitted that if the trawler had had full power, he could have avoided the collision with the bridge. He stated that he had used the reverse power on the boat "quite a bit" prior to the accident. He further stated that with the power of the engine in the "CAPT. DUTCH" he could stop "almost dead" at 2 to 3 knots, by reversing the engines. Captain Hagan testified that when he first attempted to put the vessel in reverse he lost power. Mr. Horace Schmahl, an expert marine surveyor, stated that at the speed of 2 to 3 knots, reversing the engine would not be enough to shear the pin. The conclusion is inescapable that the condition causing the "CAPT. DUTCH" to be without reversing power existed prior to the accident. Thus the ship was indeed unseaworthy and this condition was a contributing cause of the collision.

■ The plaintiff contends, and rightly so, that the failure of the bridge tender to open the bridge or to give a warning signal that it would not open violated the statutory duty imposed by 33 U.S.C. §§ 494, 499, and the Regulations issued pursuant thereto. It is also true, as the plaintiff argues, that

"A vessel, having given proper signal to open the bridge and prudently proceeding under slow speed, has, in the absence of proper warning, the right to assume that the bridge will be timely opened for passage. She is not bound to heave to until the bridge has been swung or raised and locked, and to critically examine the situation before proceeding (citation omitted), but may carefully proceed at slow speed upon the assumption that the bridge will open in response to the signal, and may so proceed until such time as it appears by proper warning, or in reasonable view of the situation, that the bridge will not be opened (citation omitted), when it becomes the duty of the vessel, if possible, to stop, and, if necessary, to go astern."

Clement v. Metropolitan Westside El. Ry. Co., 123 F.271 (CA 7—1903).

The last portion of the above passage is the barrier to the plaintiff's claim that the negligence of the defendant was the sole cause of the accident. For it is clear from the *Clement* decision that when, as in this case, the master of the vessel becomes aware that the bridge will not open, it is his duty to stop, if possible, or even go astern. It is equally clear from the evidence that had the "CAPT. DUTCH" been in a seaworthy condition, it would have been able to come to almost a "dead stop," and thereby avoid the collision. The cases cited by plaintiff to support his argument that the unseaworthy condition of the "CAPT. DUTCH" should not invoke the doctrine of mutual fault, are not controlling. Those decisions involved situations where through one or more factors, the vessel, usually a tug with a tow of barges, was placed in a situation where it simply could not avoid the accident. The present case is simply not such a situation. It is the finding of this Court that the Department of Highways, State of Louisiana, and the "CAPT. DUTCH" are guilty of mutual fault. Thus the divided damages rule must apply. Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Empire Seafoods, Inc. v. Anderson, 398 F.2d 204 (CA 5—1968).

In so far as structural damages to the "CAPT. DUTCH" directly resulting from the collision, the defendant does not take issue with the plaintiff's figure of $8,139.33. Thus the State of Louisiana is liable to Arthur Hagan and Stonewall Insurance Company for one-half of this amount.

With regard to the subsequent engine damage, occurring August 4, 1972, this Court concludes that the plaintiff has failed to show by a preponderance of the evidence a causal connection with the collision of June 26, 1972. Six weeks elapsed between the collision and the overheating of the engine. Paul Hagan himself stated that he saw a small leak in the high pressure water hose a day or two after the collision and put a piece of tape on it. Mr. Schmahl, the plaintiff's expert, stated that in his professional opinion, the eroding of the inside of the hose was caused by the frantic efforts of Paul Hagan to extricate himself from the bridge after the collision as well as his attempts to avoid the collision. These efforts, he surmised, caused a "runaway engine," resulting in the water in the engine boiling away the inside of the hose. He further stated that this condition would not have been discoverable from an inspection of the outside of the hose. However, the Court finds serious questions concerning Mr. Schmahl's conclusions. Mr. Hagan did not state that he made any "frantic efforts" to avoid collision or to get out from under the bridge. His testimony was to the effect that immediately upon reversing engines, he knew that he had no power and then tried to steer toward the bank to avoid a collision. He stated that the engine revved up and made a lot of noise when he attempted to reverse power, but this is the only evidence in the record as to the engine performance on that day. Further, Mr. Schmahl surmised, the engine overheated on June 26 prior to and after the collision. If this had indeed occurred, no doubt the water temperature alarm would have registered this fact. Yet no evidence was introduced in this connection. The only related statement is Mr. Schmahl's opinion that on August 4 the rupture of the hose caused the water to rush out too fast for the alarm to go off. Further, within a week of the collision, the "CAPT. DUTCH" was again on the waters fishing, remaining so for five weeks before the engine damage was sustained. It is just as probable that the small leak in the hose which Mr. Hagan saw after the collision became a big leak resulting in the damage, or that the engine simply became overheated during the fishing trips, caus-

ing the hose to erode from within. It is the plaintiff's duty to prove by a preponderance of the evidence that the damages he claims are causally related to the incident complained of. This he has failed to do. Therefore it is the opinion of this Court that no award will be made in connection with the engine damages sustained on August 4, 1972.

■ Plaintiff Hagan asks for an award of damages for loss of profit or demurrage. The allowance of demurrage depends on whether profits actually have been, or reasonably may be supposed to have been lost. It must be shown with reasonable certainty that the vessel would have been employed if she had been in good repair. The burden of establishing that profits were lost is upon the owner of the vessel. The Umbria, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053 (1897); City of Miami v. Western Shipping & Trading Company, 232 F.2d 847 (CA 5—1956). This Court feels that with regard to the one week of service lost following the June 26, 1972 collision, the plaintiff has shown with reasonable certainty a loss of $1,250. The Department of Highways is thus liable for one-half of such demurrage. For reasons previously stated, no award will be given for demurrage following the August 4, 1972 engine damage.

■ Finally, the stipulated damages of $723.17 incurred by Louisiana Power and Light Company will be evenly divided and paid by the plaintiff and the defendant.

For these reasons, there will be judgment entered herein in favor of the plaintiffs and against the defendant, the Louisiana Department of Highways, in the sum of $4,694.66 and there will be judgment entered in favor of the intervenor, Louisiana Power and Light Company in the sum of $723.17, one-half of which judgment, or the sum of $361.59, shall be paid by the plaintiffs and the other half, $361.58, to be paid by the defendant, Louisiana Department of Highways.