555 So.2d 568 (1989)
ABDON CALLAIS BOAT RENTALS, INC.
v.
LOUISIANA POWER AND LIGHT COMPANY.
No. 88 CA 1880.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
Writ Denied March 22, 1990.
*570 Charles Hanemann, Henderson, Hanemann & Morris, Houma, for plaintiff-appellee Abdon Callais Boat Rentals, Inc.
Charles A. Nunmaker, Monroe & Lemann, New Orleans, for defendant-appellant La. Power & Light Co.
Ronald R. Thompson, Baton Rouge, for defendant-appellee State of La., Dept. of Transp. & Dev., Dept. of Highways.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
This is an admiralty action arising out of a marine collision between a vessel, the M/V ADA B. CALLAIS, and a stationary submarine electrical cable installed and owned by Louisiana Power & Light Company.
Abdon Callais Boat Rentals, Inc. (Callais), owner of the vessel, brought suit for damages against Louisiana Power & Light Company (LP & L), owner of the electrical cable. Subsequently, LP & L filed a reconventional demand against Callais for damages to its cable. LP & L also brought a third-party demand against the State of Louisiana, Department of Transportation and Development (State), naming the State as a third-party defendant and as defendant in reconvention. Thereafter, Callais amended its pleadings and joined the State as an original defendant. Callais also filed a cross-claim against the State in reconvention. The trial court found that the collision was caused solely by LP & L's cable which was exposed in violation of its permit from the United States Army Corps of Engineers (Corps), which required the cable to be buried a minimum of one foot beneath the mud line of Bayou Lafourche. The trial court made the following findings of fact and conclusions of law:
On the night of March 16, 1982, the M/V ADA B. CALLAIS (ADA B) was being navigated in Bayou Lafourche in a southerly direction. The ADA B was a cargo vessel. The length of the vessel measured about one hundred fifteen feet. Captain Colville was the captain of the vessel, and John Bryant was the deck hand. They were the only two persons aboard the ADA B at the time of the collision.
As the ADA B approached the Leeville Bridge, which spans Bayou Lafourche, the vessel stopped for the bridge to open. Positioned near the Leeville Bridge is what the parties termed the East-West Canal. The mouth of the East-West Canal is located on the East side of Bayou Lafourche, and its waters flow into and out of Bayou Lafourche.
The ADA B blew its horn for the Leeville Bridge to open. The ADA B held its position near the center of Bayou Lafourche while waiting for the opening of Leeville Bridge. The ADA B was positioned north of the bridge and north of the mouth of the East-WEst [sic] Canal.
As soon as the bridge was opened, the ADA B started forward. The vessel moved forward a short distance before becoming entangled with a submerged electrical cable owned by LP & L. The entanglement caused the vessel to be pulled toward the west bank of Bayou Lafourche. The cable wrapped around the shaft and propellers of the ADA B, and it caused the engines to stall.
The next morning the damages were assessed by both Callais and LP & L employees. The parties determined that the cable would have to be cut in order to free the vessel. The damages sustained due to the collision were stipulated by the parties at trial. Callais sustained *571 damages in the total sum of Twenty-Seven Thousand Two Hundred Sixty-Seven and 91/100 ($27,267.91) Dollars. LP & L's damages totaled Fifty-Six Thousand Nine Hundred Seventeen and 25/100 ($56,917.25) Dollars.
This is a case within the admiralty and maritime jurisdiction of the United States. In reaching its decision the Court must follow the maritime law of the United States.
The United States Code provides that no obstruction of a navigable waterway is permitted. The Secretary of the Army, however, is authorized to grant exceptions to this prohibition. 33 U.S.C. § 403.
LP & L was granted a permit by the United States Corps of Engineers in 1972. The permit gave LP & L the authorization to run a submarine electric cable across Bayou Lafourche near the Leeville Bridge. The permit required that the LP & L cable be submerged at least one foot below ground level and at least twenty feet below mean low water.

The Pennsylvania rule places the burden on the party who violates a statutory or regulatory rule to prove that the rule violation could not have been a cause of the marine collision. People [Peoples] Natural Gas Co. v. Ashland Oil, Inc., 604 F.Supp. 1517, 1523 (W.D.Pa.1985).
The Court will now discuss the application of The Pennsylvania rule with regard to the three parties in this lawsuit.
LP & L's employees testified that the cable was installed in 1972, some ten years prior to the collision. During that ten year period the cable had never been inspected by LP & L. The facts show that barnacles and other marine growth were found after the accident on almost the entire lenght [sic] of the exposed cable. Barnacles will not grow on an object unless that object is exposed to sunlight. Based upon this evidence, the Court concludes that at the point of collision, LP & L's cable was exposed.
It has been held that the failure to comply with the permit issued by the United States Corps of Engineers triggers the application of The Pennsylvania rule. Orange Beach Water Sewer, Etc. v. M/V Alva, 680 F.2d 1374, 1383 (11th Cir.1982). LP & L has a duty to maintain its cable so that it does not become an obstruction to navigation. Id. LP & L's duty not to create an obstruction to navigation extends to the entire width of Bayou Lafourche, and is not limited to the dredged channel. Id.

Due to the exposed cable, LP & L has failed to comply with its permit and the laws of navigation. The violation triggers the application of The Pennsylvania rule as to LP & L. The facts show that LP & L's exposed cable created an obstruction to navigation. The Court holds that LP & L has not met its burden under The Pennsylvania rule of proving that the exposed cable could not have been a cause of the collision.
Captain Colville testified that he saw the cable crossing signs and that he had knowledge of an underground cable in the area. The captain maintained the ADA B near the center of Bayou Lafourche while waiting for the Leeville Bridge to open. The evidence does not support LP & L's theory that the ADA B's propellers found the buried cable. Neither the propellers nor the cable had any mud on it.
Though Captain Colville had knowledge of a submerged cable in the area, he did not have any knowledge of an exposed cable. The evidence supports the Court's conclusion that Captain Colville operated the ADA B reasonably and prudently under the circumstances. The Pennsylvania rule is not applicable as to Callais, because the captain of the ADA B did not violate a navigable rule.
The Leeville Bridge tender on duty at the time of the collision was Ruby Adams. Ms. Adams honestly could not remember the collision. Her work log shows that at 11:25 p.m. on March 16, 1982, the Leeville bridge was opened for the ADA B. At 11:30 p.m. the electricity went off. The bridge was closed by generator at 12:40 a.m.
LP & L's accident report gives the date and the time of the accident as March 16, *572 1982, at 11:25 p.m. LP & L's accident report and Ms. Adams' log coincide. Based upon the evidence, the Court believes that the collision occurred at about 11:30 p.m. on March 16, 1982.
Captain Colville testified that he gave the first signal to the Leeville Bridge tender at about 11:00 p.m. on March 16, 1982. He also gave several other signals. The court, however, holds that the twenty-to-thirty minutes to open the bridge was not an unreasonable delay. The Court concludes that the bridge tender, Ruby Adams, did not violate a statutory or regulatory rule. The Pennsylvania rule is not applicable as to the State, because the bridge tender did not violate a navigable rule.

The Oregon rule states that when a moving vessel collides with a fized object, there is presumption that the moving vessel is at fault. The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895). The Oregon rule applies only against moving vessels which have damaged wharves, moored vessels, and other stationary, visible objects. The Oregon rules [sic] does not apply to collisions with sunken and hidden objects. Delta Transload, Inc. v. MV Navios Commander, 818 F.2d 445, 450 (5th Cir.1987). The Oregon rule is not applicable as to Callais, because the collision involved a hidden object.
In conclusion, the Court finds that LP & L has failed to meet its burden under The Pennsylvania rule. Accordingly, judgment will be rendered in favor of plaintiff, Callais, and against the defendant, LP & L, awarding to the plaintiffs total damages of Twenty-seven Thousand, Two Hundred Sixty-Seven and 91/100 ($27,267.91) Dollars, together with legal interest from the date of judicial demand until paid.
LP & L appeals the trial court judgment, alleging error in both the trial court's factual and legal findings to wit:
(1) The trial court erred in construing LP & L's cable permit issued by the Corps of Engineers and in finding that LP & L's cable was not in compliance therewith.
(2) The trial court erred in applying The Pennsylvania rule against LP & L.
(3) The trial court erred in finding that the navigation of the ADA B by Captain Colville was reasonable and prudent under the circumstances.
(4) The trial court erred in refusing to apply The Oregon rule against Callais.
(5) The trial court erred in finding that the delay in opening the Leeville bridge was reasonable.
(6) The trial court erred in failing to apply The Pennsylvania rule against the State.
(7) The trial court erred in finding LP & L solely at fault for the collision.
(8) The trial court erred in refusing to consider the testimony of Mr. Ryan Uhlich, an expert witness appearing on behalf of LP & L.

THE PENNSYLVANIA RULE
The Pennsylvania rule provides that when a party at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, the burden rests upon her to show that her fault not only was not, but could not have been, the cause of the collision. The Steamship Pennsylvania v. Troop, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874). The doctrine applies to collisions between a vessel and a stationary object. Orange Beach Water, Sewer, etc. v. M/V Alva, 680 F.2d 1374 (11th Cir.1982). The Pennsylvania rule shifts the burden of proof as to causation to the statutory offender, but it does not by itself impose liability. The statutory violator may rebut the presumption of liability with evidence showing that the violation could not have been a contributing cause of the collision. United Overseas Export Lines, Inc. v. Medluck Compania Maviera, 785 F.2d 1320 (5th Cir.1986).
"[F]ault which produces liability must be contributory and proximate cause of the collision, and not merely fault in the abstract." Board of Commissioners of Port of New Orleans v. M/V Farmsum, 574 F.2d 289, 297 (5th Cir.1978). (Citations omitted.) It is said of The Pennsylvania *573 rule that "the Supreme Court `did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision, no matter how speculative, improbable or remote.'" Orange Beach, 680 F.2d at 1381, citing Compania de Maderas de Caibarien, S.A. v. The Queenston Heights, 220 F.2d 120, 122-123 (5th Cir.), cert. denied, 350 U.S. 824, 76 S.Ct. 52, 100 L.Ed. 736 (1955).

APPLICATION OF THE PENNSYLVANIA RULE TO LP & L
A finding of a statutory violation is primarily a factual issue subject on appellate review to the clearly erroneous standard. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under this standard, the finding of negligence on the part of LP & L cannot be reversed unless a review of the record shows the trial court was clearly wrong.
In pertinent part 33 U.S.C. § 403 provides: "The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited...." The duty not to create an obstruction to navigation extends the entire width of a naviable waterway, and is not limited to the dredged channel. See Orange Beach, 680 F.2d 1374.
The Corps of Engineers' permit issued in 1972 to LP & L for the installation of the electric cable provided:
CABLE TO BE LAID IN A 125' CHANNEL NOT LESS THAN 20' BELOW MEAN LOW WATER WITH A 1 TO 2.5 SLOPE FROM BOTTOM EDGE OF CHANNEL TO TOP EDGE OF CHANNEL AND WITH A 12 TO 1 SLOPE FROM TOP OF CHANNEL TO THE BANK, NOT LESS THAN 1' BELOW GROUND LEVEL FROM BANK TO POLE.
The permit clearly required the LP & L cable to be at least one foot below ground level the entire width of Bayou Lafourche, and at least 20 feet below mean low water in the 125 foot navigational channel. The evidence supports the trial court's finding that at least a portion of the LP & L cable was in violation of the permit at the time of this collision, creating an obstruction to navigation on Bayou Lafourche. The Pennsylvania rule was therefore properly applied against LP & L.
The record also supports the trial court's finding that LP & L failed to rebut the presumption that it was negligent. LP & L's contention that the ADA B dug up the cable is unsupported in light of the uncontroverted evidence that the section of cable which the ADA B struck was not buried. The condition of the cable at the time of the collision clearly constituted an unreasonable obstruction to navigation. The risk of collision with a vessel is the most obvious consequence of LP & L's failure to maintain its cable within the limits of its permit, therefore making it a cause in fact of the collision.

APPLICATION OF THE PENNSYLVANIA RULE AGAINST THE STATE
The trial court found that the State did not violate a statutory or regulatory rule and consequently the court did not apply The Pennsylvania rule. LP & L contends that under 33 U.S.C.A. § 494, the bridge tender is guilty of statutory fault when failing to open a drawbridge in response to the first proper signal given by an approaching vessel.
We need not disturb the trial court's findings in this regard, as we conclude from the evidence that even if the State is guilty of a statutory violation, the State rebutted any presumption of negligence. As set forth above, The Pennsylvania rule does not, by itself, impose liability. It merely shifts the burden of proof as to causation to the statutory offender.
The evidence establishes that the collision occurred approximately 30-60 minutes after the ADA B first signalled the bridge. The ADA B was able to maintain a safe holding position (in the middle of the Bayou) during this time. Unlike the cases *574 cited by LP & L,[1] there is no evidence in this case that the failure of the bridge to open promptly caused the vessel to lose a safe holding position. Captain Colville and Mr. Bryant testified that while they waited for the bridge to open, the vessel remained within 20 feet east or west of the middle of Bayou Lafourche. The undisputed evidence shows that the collision between the vessel and the cable occurred after the bridge was opened and the vessel had traveled approximately 230 feet from her holding position. The duty to open the bridge promptly does not encompass the risk that once a vessel is underway from its safe holding position that it will navigate into an exposed cable. Without a duty there can be no negligence.

THE OREGON RULE
When a moving vessel strikes a stationary object a presumption generally arises that the vessel is at fault. The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895). "[T]his presumption does more than merely require the ship to go forward and produce some evidence on the presumptive matter. The moving vessel must show that it was without fault or that the collision was occasioned by fault of the stationary object or was the result of inevitable accident." Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 794-795 (5th Cir.1977) (footnote omitted), (quoting Patterson Terminals, Inc. v. S/S Johannes Frans, 209 F.Supp. 705, 707 (E.D.Pa.1962).

APPLICATION OF THE OREGON RULE AGAINST CALLAIS
The trial court concluded that The Oregon rule did not apply to Callais because the cable was a hidden object. The court relied on language to that effect in Delta Transload, Inc. v. M/V Navios Commander, 818 F.2d 445 (5th Cir.1987), which stated:
[T]he presumption of negligence has previously been invoked only against moving vessels which damaged wharves, moored vessels, and other stationary, visible objects. We do not think that the presumption should apply to allisions with sunken and hidden objects.
Id. at 450.
The court in Delta Transload went on to say however that:
[K]nowledge of an otherwise nonvisible object warrants imposition of presumed negligence against those operating the vessel who possessed this knowledge. If the buoy's presence was known, the accident was neither fortuitous nor unavoidable; therefore, the rationale supporting the presumption would not be violated.
Id. at 450.
The presumption of fault has been applied to instances where the fixed object happens to be a submerged pipeline. Consolidated Aluminum Corp. v. C.F. Bean Corp., 639 F.Supp. 1173 (W.D.La.1986). However, when it is proven that the submerged pipeline or cable is not laid in accordance with required permits, thus posing an obstruction to navigation which the navigator of a vessel cannot possibly be aware of, the vessel has rebutted any presumption of fault based purely on the fact that the vessel struck a stationary object. Peoples Natural Gas Co. v. Ashland Oil Co., Inc., 604 F.Supp. 1517 (W.D.Penn. 1985), Orange Beach, 680 F.2d 1374; Consolidated Aluminum, 639 F.Supp. 1173. As noted by the court in Peoples, under facts similar to the instant case, "the presumption of negligence flowing from a moving vessel striking a stationary object serves no useful purpose in this case." Peoples, 604 F.Supp. at 1522.
After the presumption of negligence was rebutted, the burden shifted to LP & L to prove by a preponderance of the evidence that the ADA B was not navigated in a reasonably prudent manner, under the circumstances, and that its imprudence caused the collision. Peoples, 604 F.Supp. 1517. LP & L contended that at the time of the collision the ADA B was navigating outside of the navigational channel and that her propellers dug up the cable thus *575 causing the accident. LP & L presented no evidence nor cited any authority regarding prudent seamanship while navigating vessels outside of navigational channels.
Although the evidence established that the ADA B was near the middle of the Bayou at the time of the collision, the map introduced by LP & L shows that the 125' navigational channel, which is not marked, is located to the east of the centerline of Bayou Lafourche, thus placing the ADA B outside of the navigational channel at the time of the accident. However, the mere fact that the ADA B may have been navigating outside of the navigational channel is without consequence in this case. Captain Colville testified that shortly before the collision the fathometer indicated a depth of ten feet. He stated that the vessel drew six feet of water in the rear, leaving a four foot clearance under the propellers. The area where the ADA B was navigating was clearly capable of supporting the vessel and as such was navigable in fact. The fact that the vessel's propellers may have encountered the soft mud of the bank is also immaterial to the issue of the negligence of the ADA B because navigable waters include the muds along the shore through which vessels are capable of running. Orange Beach, 680 F.2d 1374, 1381, n. 6.
Even if the ADA B was not properly navigated, we find that under the facts of this case the ADA B owed no duty of prudent navigation to the exposed cable of LP & L, as it was not foreseeable that the cable would be exposed. LP & L contends that the location of the cable was known by Captain Colville and therefore the ADA B owed a duty of prudent navigation. Although the posted signs on the east and west banks of Bayou Lafourche served notice that there was a cable crossing at a given point, they did not serve notice that the cable sat uncovered on the bottom of the bayou in violation of its permit. A vessel owes no duty of prudent navigation to an unforeseen libellant. Diamond State Tel. Co. v. Atlantic Refining Co., 205 F.2d 402 (3d Cir.1953).
In Diamond, a case involving a collision between a tanker and a submarine cable which had been raised to the deck of barges for repairs, the Third Circuit found that:
Here we have the unforeseeable libellant, a maritime instance of the landlubber's unforeseeable plaintiff. The scope of the Yeager's duty is not to be determined by what we know now but by what those aboard her knew or should have known as they approached the flotilla. They knew that there were one or more vessels ahead of them and that any unseamanlike navigation on their part would subject those vessels to an unreasonable risk of harm. Thus, they had a duty to navigate so as not to create such risk, and they did. They could not possibly have foreseen that poor navigation would have subjected libellant's cable to an unreasonable risk of harm because they neither knew nor should have known that the cable was there. Thus, as to the cable, there was no duty and, consequently, could be no negligence. (Footnotes omitted.)
Id. at 407.
The analysis expressed in Diamond was followed in Peoples, 604 F.Supp. 1517, where a tugboat struck a pipeline which was exposed, in violation of its permit. The court in Peoples held that the tugboat captain could not have foreseen that the pipeline sat uncovered on the riverbed and therefore he had no duty of care to the pipeline. See also Consolidated Aluminum Corp., 639 F.Supp. 1173.
Under the facts of the instant case we find that Callais owed no duty to LP & L as the ADA B could not have foreseen that the cable was exposed in violation of its permit.

EXPERT TESTIMONY
Appellant LP & L assigns as error the trial court's exclusion of the testimony of its expert, Mr. Uhlich. The exclusion was prompted by LP & L's failure to supplement interrogatories in accordance with LSA-C.C.P. art. 1428, which provides in pertinent part as follows:

*576 Art. 1428. Supplementation of responses
A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
Five years prior to trial Callais propounded interrogatories requesting the names of any experts LP & L would call as witnesses. Although LP & L never supplemented its responses, LP & L amended its pre-trial statement 34 days before trial to include the name of Mr. Uhlich and the fact that he would give expert testimony about navigation and damages; the amendment did not specify what the substance of his testimony would be.
Subsequent to the amendment, Callais took no steps to depose the witness or seek a continuance. Instead, Callais waited until trial to object to the testimony on the ground of non-compliance with LSA-C.C.P. art. 1428. The trial court sustained Callais' objection and did not allow the expert to testify. The expert's testimony was proffered by LP & L.
Thus this assignment of error presents a two-pronged issue:
1. Did LP & L's failure to inform its opponent about the substance of the expert's testimony bar the court from considering the amendment to the pre-trial statement as a substitute for compliance with LSA-C. C.P. art. 1428?
2. When Callais had actual notice of the identity of the witness more than 30 days prior to trial, did the failure of Callais to depose the witness or to seek a continuance bar plaintiff from objecting to the witness's testimony at trial?
An affirmative answer to the first question would mean that the trial court was correct in excluding the testimony and would place the proffered testimony outside the scope of our consideration. An affirmative answer to the second question would mean that the trial court erred in excluding the testimony and would allow us to review the contents of the proffer.
A survey of relevant Louisiana cases reveals a judicial concern for maintaining a fair give-and-take of information between litigants. The trial judge has great discretion in deciding whether to receive or refuse the testimony objected to on the grounds of failure to abide by the statutory mandate, but any doubt must be resolved in favor of receiving the testimony. When a party has not satisfied the technicality of supplementing responses to interrogatories, the reviewing court can look to the record for a willful or negligent failure to disclose names of witnesses in determining whether the trial judge abused his discretion. Coignet v. Deubert, 413 So.2d 253 (La.App. 4th Cir.1982). Additionally, a party's failure to cooperate after the discovery is made can color the final decision on admissibility. See Lodrigue v. Houma Terrebonne Airport Comm, 450 So.2d 1004 (La.App. 1st Cir.1984).
On the other hand, an opponent with actual notice of the witness's identity cannot wait to object to the testimony at trial merely for strategic purposes. If actual notice is acquired within a reasonable time, a party must seek some corrective action or the party will be deemed to have waived the right to object at trial. Belk v. Montgomery Ward and Co., 501 So.2d 1008 (La.App. 2d Cir.1987).
Our review of the record in the instant case reveals no intentional subterfuge on the part of LP & L to conceal the witness. Furthermore, the five-year time span between the propounding of the interrogatories and the amendment of the pre-trial statement diminishes the degree of neglect with which LP & L can be charged for failure to supplement its response. Finally, Callais had actual notice of the witness's *577 identity more than 30 days prior to trial, but Callais omitted any request for relief from the effects of LP & L's failure to supplement the interrogatories.
Accordingly, we resolve both parts of the issue in appellant's favor: the omission from the amendment of the substance of the expert's testimony did not ipso facto preclude the trial court from exercising its discretion to admit the testimony despite failure to fully comply with Article 1428; Callais' inaction after actual notice constituted a waiver of its right to object to the witness's testimony at trial.
For these reasons, we will consider the proffered testimony of the expert witness, Mr. Uhlich. Within the context of the proffer, the trial court accepted the witness as an expert in the field of vessel propulsion and marine surveying, not accident reconstruction. We find no fault with this exercise of discretion by the trial court.
Mr. Uhlich's review of materials concerning the suit against LP & L consisted of an analysis of photographs taken by others. The crux of the expert's testimony was that the shiny or "polished" rims of the propeller blades indicated that the vessel had encountered sand, silt, bottom material and/or soil prior to hitting the LP & L cable.
Although the witness was of the opinion that the cable was submerged when the vessel encountered it, his testimony is not conclusive proof of that fact. The witness admitted that the shiny condition could have been produced as early as 45 minutes prior to the accident. Thus, the condition of the blades does not compel an inference that the sand or silt encountered by the vessel was the same sand or silt which LP & L contends was covering the cable. Furthermore, it is equally plausible that at least part of the shiny condition of the rims was produced by the motion of the vessel through the silt after the vessel was engaged with the cable.
Since Mr. Uhlich's testimony is insufficient to rebut the evidence presented by Callais, we hold that consideration of the testimony does not alter the outcome of the case.
For the reasons set forth the judgment of the trial court finding LP & L solely liable for the collision is affirmed. Costs of appeal to be paid by appellant, LP & L.
AFFIRMED.
SHORTESS, J., concurs.
NOTES
[1] Florida East Coast Railway Company v. Revilo Corp., 637 F.2d 1060 (5th Cir.1981); Hagan v. Department of Highways, 368 F.Supp. 446 (M.D. La.1973), aff'd, 496 F.2d 1405 (5th Cir.1974).