590 So.2d 1213 (1991)
Clayton CURRY, Sr. and Gwendolyn Lee Stromas Curry, Individually, and on behalf of the Estate of Clayton Curry, Jr.
v.
Marvin JOHNSON, the Lafourche Parish Sheriff's Department, the Lafourche Parish Police Jury, the State of Louisiana, Department of Transportation and Development, and Through its Department of Public Safety, the ABC Insurance Company, and the DEF Insurance Company.
No. CA 90 1053.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
*1214 Alan Green, New Orleans, for plaintiffs-appellants Clayton Curry, Sr. et al.
William A. Stark, Weeks, Stark & Callahan, Houma, for defendants-appellees Marvin Johnson, et al.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
EDWARDS, Judge.
Plaintiffs, Clayton Curry, Sr. and Gwendolyn Curry, the parents of the deceased, Clayton Curry, Jr., appealed a judgment dismissing the suit for damages resulting from their son's death in an accident on Louisiana Highway 1. We affirm.

FACTS AND PROCEDURAL BACKGROUND
On September 19, 1982, at approximately 11:25 p.m., Mr. Clayton Curry, Jr. was killed in an accident while a passenger in a pickup truck driven by Mr. John Groen. Mr. Groen, while traveling south on Highway 1 in Lafourche Parish, left the highway at the intersection of 112th Street and Highway 1 near Galliano, Louisiana. This intersection was within an eight mile state highway construction project to overlay the roadway. The right wheels of the truck left the roadway and traveled along the southbound shoulder. The truck returned to the roadway, crossed over the highway to the northbound shoulder, hit a boat shed and pilings on the edge of the bayou, and plunged into the bayou running along the side of Highway 1. The truck came to rest with the passenger side of the truck down in the bayou.
In 1983, the plaintiffs filed a suit for damages on behalf of themselves and the estate of the deceased. By the time of trial, the only remaining defendant was the *1215 State of Louisiana, through its Department of Transportation and Development (DOTD). Plaintiffs alleged that the death of Mr. Curry, Jr. was caused by a defective highway and the DOTD's failure to warn adequately of a construction zone. The trial judge found that, although the highway was bumpy, the bumps were not significant and the highway was not defective or unreasonably dangerous. The trial judge determined that the sole cause of the accident was the negligence of the driver, Mr. Groen.
Plaintiffs appealed and asserted the following seven assignments of error:
1. The trial court erred when it allowed Officer Greg Whitney to testify as an "alcohol and the driver expert" and "highway traffic and safety expert" when he was not listed as such in any pre-trial discovery.
2. The trial court erred in qualifying Officer Greg Whitney as an expert in "alcohol and the driver." Officer Whitney's knowledge, skill and education was not sufficient to meet expert status in this field nor as a "highway and traffic safety" expert.
3. The trial court erred when it denied appellants motion in limine and allowed Officer Greg Whitney to testify and qualify (sic) him as an accident reconstruction expert, and a fact witness.
4. The trial judge erred in allowing Mr. Francis Wyble to testify as he was not listed in pre-trial discovery as an expert witness.
5. The trial judge erred when he did not send petitioner's counsel the final pre-trial order.
6. The trial judge's decision amounted to an abuse of discretion in finding no negligence whatsoever on the part of DOTD.
7. The deposition of John Groen was not properly introduced into evidence by the respondent. Therefore, it should not have been used as evidence in the final judgment.

ASSIGNMENTS OF ERROR ONE, TWO AND THREE OBJECTIONS TO GREG WHITNEY AS A WITNESS
The plaintiffs argue that because DOTD failed to designate Mr. Whitney as an expert witness in two fields, he should not have testified in those fields. Plaintiffs assert that Mr. Whitney was not qualified as an expert in any of the three fields, including the field of accident reconstruction. The plaintiffs also contend that allowing Mr. Whitney to testify as an expert and to give an opinion based on facts that he gathered at the scene created bias.
Greg Whitney, a state trooper at the time of the accident, investigated the scene of the fatality. Mr. Whitney subsequently left the state police and became a consultant in accident reconstruction.
Soon after the petition was filed, plaintiffs sent interrogatories to DOTD requesting the names of expert witnesses and the subject matter of their testimony. DOTD responded with the information available at the time. Subsequently, DOTD updated the response and added Greg Whitney as an expert witness in the area of accident reconstruction. In the final pre-trial order, Mr. Whitney was listed simply as a witness. After the pre-trial conference, the trial judge did not require the parties to designate the witnesses as either fact or expert. Neither plaintiffs nor defendants specifically designated the witnesses. The final pre-trial order was filed in the record on December 12, 1989, and the trial was held on February 1, 1990. Plaintiffs filed a motion in limine objecting to Mr. Whitney's qualifications as an accident reconstructionist and claiming bias would exist "by virtue of his being hired by the state to defend his own actions and conclusions at the time of the accident."
At trial, when DOTD submitted Mr. Whitney as an expert in three fields, plaintiffs objected only to Mr. Whitney's qualifications. Plaintiffs did not claim surprise or prejudice and did not object to DOTD's failure to list Mr. Whitney as an expert in the field of alcohol and the driver and the field of highway safety.
*1216 Both parties questioned Mr. Whitney concerning his qualifications. The trial judge accepted Mr. Whitney as an expert in all three fields. The court denied the motion in limine and allowed Mr. Whitney to testify as a fact witness and an expert with opinions based on evidence he helped gather.
Louisiana Code of Civil Procedure article 1551 allows the trial court to hold pre-trial conferences and to render orders that control "the subsequent course of the action, unless modified at the trial to prevent manifest injustice." A trial judge has much discretion in its determination of whether an order should be modified. Sibley v. Menard, 398 So.2d 590, 597 (La.App. 1st Cir.1980), cert. denied, 400 So.2d 211 (La.1981). Article 1551 does not require that the witnesses be designated as fact or expert and does not require a listing of the subject matter area of the testimony. A party does have a duty to supplement a discovery request for the identity of persons expected to be called as expert witnesses and for the subject matter of their testimony. LSA-C.C.P. art. 1428. If a party objects to the offered testimony, a trial judge has great discretion in deciding whether to receive or refuse the testimony objected to on the grounds of failure to abide by the rules, but any doubt must be resolved in favor of receiving the information. Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d 568, 576 (La.App. 1st Cir.1989), cert. denied, 558 So.2d 583 (La.1990).
In qualifying an expert under Louisiana Code of Evidence article 702, a trial judge may accept the expert if the specialized knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue...." Broad discretion is accorded the trial judge in deciding the acceptability of a witness as an expert and the admissibility of the accepted expert's testimony. LSA-C.E. 702, Comment (d); Hunnicutt v. Kent, 434 So.2d 91 (La.App. 5th Cir.1982), cert. denied, 435 So.2d 442 (La.1983).
We find no abuse of discretion in the trial judge's acceptance of Mr. Whitney as an expert based on his qualifications. The trial judge apparently found that Mr. Whitney's specialized knowledge gained through experience and training was sufficient and would assist the trier of fact.
The record supports that conclusion. Mr. Whitney's credentials were extensive. He had seventeen years of experience with the state police, many of those years being in accident reconstruction. He participated in training programs in the field of accident investigation and accident reconstruction as an officer and after leaving the state police. While in the state police, he qualified as a field breath supervisor. He attended a course on alcohol and the driver sponsored by the Bayou Council on Alcoholism in conjunction with Texas A & M and the Sam Houston Institute. He has qualified as an instructor in DWI rehabilitation, in defensive driving and in the Louisiana Safe Driving Course. Mr. Whitney testified that he had been accepted as an expert in all three fields in other courts and had not been rejected by a court in any of the fields.
We find no abuse of discretion in the trial judge's acceptance of Mr. Whitney as an expert in alcohol and the driver and in highway safety, even though these two fields were not specifically listed in the updated discovery or the pre-trial order. The two contested fields are closely related to the field of accident reconstruction. The plaintiffs did not object at trial to DOTD's failure to list the two new fields and plaintiffs have not demonstrated prejudice or surprise resulting from such a failure.
We find no merit in plaintiffs claim of bias on the part of Mr. Whitney because he testified as an expert and a fact witness. It is not uncommon for expert witnesses, such as medical examiners and treating physicians, to testify to facts within their own knowledge and to provide an opinion based on these facts. Cf. McCoy v. Arkansas Natural Gas Company, 193 La. 238, 190 So. 391, 394 (1939); Wetta v. Evensky, 250 So.2d 123, 127 (La.App. 4th Cir.1971); Broussard v. Dumas Chevrolet Company, 120 So.2d 863, 868 (La.App.1960), cert. denied, *1217 June 29, 1960. No particular evidence of prejudice was presented that would place this case in a special category.

ASSIGNMENT OF ERROR FOUR OBJECTION TO FRANCIS WYBLE AS AN EXPERT WITNESS
Plaintiffs argue that because Mr. Wyble, a DOTD engineer, was not listed as an expert witness, surprise and unfairness resulted from plaintiffs inability to prepare properly for the testimony.
In 1984, Mr. Wyble was named as a witness in answer to discovery requests by plaintiffs. In the same response, the defendant stated that no decision had been made concerning expert witnesses. In 1988, Mr. Wyble was listed as a fact witness in a preliminary pre-trial order and as a witness in the final pre-trial order. When plaintiff objected to the acceptance of Mr. Wyble as an expert in traffic engineering during the trial in 1990, the court remembered that it had not required specific designation of the witnesses as fact or expert in the final order and that neither party made such designations. The trial judge noted that he had allowed plaintiffs' expert to testify and that he also would allow DOTD's expert to testify.
The trial court has great discretion in conducting a trial and in deciding whether to receive or refuse testimony. Combs v. Hartford Insurance Company, 544 So.2d 583, 586 (La.App. 1st Cir.), cert. denied, 550 So.2d 630 (La.1989). When a party has not satisfied the technicality of supplementing responses to interrogatories, the reviewing court can look to the record for a willful or negligent failure to disclose in deciding whether the trial court abused its discretion in receiving the testimony. Abdon Callais Boat Rentals, Inc., 555 So.2d at 576.
After a thorough review of the record, we cannot say that the trial court clearly abused its great discretion. DOTD should certainly have updated the discovery request and notified plaintiffs that Mr. Wyble would be called as an expert witness. However, the record reveals no evidence of intentional failure to disclose the expert status. Any negligence is ameliorated somewhat by the confusing pre-trial order, the failure of both sides to designate witnesses as fact or expert, and the lapse of time between the listing of witnesses in 1988 and the trial. See Abdon Callais Boat Rentals, Inc., 555 So.2d at 576.
Even if abuse had been found, it would have been harmless error. No great surprise or prejudice resulted from the testimony of Mr. Wyble and plaintiffs demonstrated no real harm. See Coignet v. Deubert, 413 So.2d 253, 256 (La.App. 4th Cir. 1982). Mr. Wyble was an engineer for DOTD at the time of the accident. His testimony was largely factual and drawn from the highway construction project's daily log or diary, which was admitted as evidence. Much of the testimony was cumulative of plaintiffs' expert, Mr. Bobby Hebert, who also relied on the daily diary for his testimony. In fact, Mr. Wyble gave little testimony that was not within his knowledge as the DOTD representative and the district supervisor. Mr. Wyble's opinion on the adequacy of the warning signs for the project was based on departmental procedures and requirements from the Manual on Uniform Traffic Control that was specifically designated for use in the project contract.

ASSIGNMENT OF ERROR FIVE FINAL PRE-TRIAL ORDER
Plaintiffs argue that their counsel was not sent a copy of the final pre-trial order. We find no merit in this assignment.
The record reveals no evidence that plaintiffs' counsel failed to receive a copy of the order. The order was filed in the record on December 12, 1989. The trial was not held until February 1, 1990. No objection or reference was made by plaintiffs' counsel at trial to any failure to receive the order timely.

ASSIGNMENT OF ERROR SIX LIABILITY OF DOTD
Plaintiffs assert that the trial judge erred in failing to find DOTD liable. Specifically, plaintiffs argue that the evidence *1218 showed that the road was defective and that DOTD did not prove that the truck driver, Mr. Groen, was intoxicated and the cause of the accident.
DOTD has a general duty to construct and maintain state highways in a condition that is reasonably safe for persons that exercise ordinary care and reasonable prudence. Cheramie v. Brunet, 510 So.2d 700, 703 (La.App. 1st Cir.), cert. denied, 513 So.2d 1209 & 1215 (La.1987). However, DOTD "is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways." U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780, 785 (La.1976). The question is whether the DOTD had a duty to protect motorists using the state highways from accidents of the type that occurred in this case. See Cheramie, 510 So.2d at 703.
When findings are based on credibility determinations, a trial court's findings of fact may not be set aside by a reviewing court in the absence of manifest error. If the objective evidence so contradicts a "witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error...." Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989). However, if two permissible views of the evidence are presented, "the factfinder's choice between them cannot be manifestly erroneous...." Rosell, 549 So.2d at 844.
Mr. Groen testified by deposition that after having a beer at his girlfriend's house, he went to a bar and had six mixed drinks of whiskey and coke. At one point in the deposition, he also testified that someone in the bar bought him a couple of beers. After leaving the bar, he traveled southbound along Louisiana Highway 1 for a few miles. He stopped and picked up a hitchhiker, Mr. Curry, Jr., and offered to give him a ride home. Mr. Groen testified that he continued driving south at about forty-five miles an hour. As the Groen truck neared the intersection of Highway 1 and 112th street, Groen claimed that a northbound vehicle forced him off the road. When Mr. Groen attempted to return to the roadway, he testified that the truck started to bounce, flipped over, crossed the highway, and traveled along the northbound shoulder. Mr. Groen testified that he tried to brake, but the southbound shoulder was not wide enough to permit a stop. He lost control when the truck flipped over. The vehicle hit some obstructions on the northbound shoulder and went into the bayou. Mr. Groen noticed some construction barricades near Larose when he began his journey, but remembered no construction warnings at the scene. He stated that the roadway on the night of the accident was blacktop and dry.
After the accident, according to Mr. Groen, he swam to the surface of the bayou and waited for Mr. Curry. When he saw no sign of Mr. Curry, Mr. Groen said that he went back to the truck to look for Mr. Curry. After failing to locate Mr. Curry, Mr. Groen said that he returned to the bank. By this time, an off duty sheriff's deputy was at the scene and Mr. Groen testified that he told the officer that a passenger was still in the truck. Mr. Groen admitted that he pled guilty to a charge of DWI stemming from the accident and that he was convicted.
Larry Spears, a safety consultant, testified for plaintiffs. In Mr. Spears opinion, the accident was caused by Mr. Groen's failure to use due diligence and reasonable care and DOTD's failure to warn adequately and channel traffic while construction was ongoing.
Mr. Bobby Hebert, the project supervisor, was called by the plaintiffs. After checking the project's daily diary, Mr. Hebert testified that signs were posted at the beginning and the end of the eight mile project. Other signs were added only if ongoing construction presented a hazard. It was impossible to tell from the diary exactly what was being done at the scene of the accident or if a hazard was present at the time of the accident.
*1219 The testimony of Mr. and Mrs. Curry, a family member and a family friend was generally the same. They testified that they were familiar with the area and the road, and that the road conditions were hazardous. They testified that the overlaying had begun in the area, that the roadway was uneven in the middle, that the roadway looked like it had been scrapped by a machine, and that the shoulder drop-off was severe.
Trooper Dana Harrison testified that he and other officers from the state police, including Trooper Greg Whitney, investigated the scene and took measurements and pictures. He testified that it was standard procedure to indicate poor road conditions, but the report did not note any road problems or ongoing construction. The shoulder was sufficient and no obstructions were present that would have impeded Mr. Groen's ability to stop. The evidence at the scene indicated that the vehicle left the road gradually. The speed of the vehicle was approximately forty-five miles an hour and no sign of radical turning was found. The investigation report noted that the primary factor in the accident was driver condition and that the driver was charged with driving while intoxicated. Trooper Harrison, the first state trooper on the scene, testified that when he spoke to Mr. Groen, Mr. Groen was incoherent and unable to say whether anyone was still in the truck.
Mr. Whitney testified that, as a state trooper, he assisted other troopers in investigating the accident. Mr. Whitney testified that it was procedure to note any sign of road problems, such as poor highway surface or bad shoulders, especially when a fatality occurred. No such problems were noted. In his opinion as an accident reconstructionist, the vehicle failed to negotiate a curve and left the roadway at the point where the road began to curve. Mr. Whitney testified concerning the effects of alcohol on a driver and testified that, in his opinion and based on the evidence at the scene, the movements of the truck in gradually leaving the road in a curve and continuing in a straight path, were consistent with the actions of an impaired driver. No signs of skidding or sudden movements, that would have been consistent with Mr. Groen's version of the accident, were found by the investigating officers. The scene provided no evidence of the vehicle bouncing around or flipping over in the roadway. In Mr. Whitney's opinion, based on the evidence at the scene and his calculations, Mr. Groen had ample opportunity to stop if he had applied the brakes before crossing over to the northbound shoulder. The record contained no evidence that the brakes had been applied. Mr. Whitney was certain that the evidence supported his reconstruction of the accident and that the accident was caused by the impaired driver.
The few photographs from the scene are too dark for any detail, however, the shoulder visible in one picture does not appear to be excessively low. It is impossible to tell if any construction was ongoing because of the poor quality of the photographs.
The trial court found that, although the road was bumpy, it was not unreasonably dangerous or defective, that the driver was intoxicated, and that the accident was caused by the gross negligence of the intoxicated driver. After a thorough review of the record, we see no reason why the trial court could not choose between the two views of the evidence presented at trial and reasonably credit the testimony of DOTD's witnesses over the testimony of plaintiffs and their witnesses as to the defectiveness of the road and the cause of the accident. The factual story accepted by the trial court is not internally inconsistent on its face or clearly contradicted by the objective evidence. We find no manifest error in the trial court's finding that the driver was intoxicated and that the accident was caused by the negligence of the driver. The scope of DOTD's duty to construct and maintain highways in a safe manner does not include the risk of injury or death caused by the gross negligence of a third party motorist.

ASSIGNMENT OF ERROR SEVEN DEPOSITION OF JOHN GROEN
Plaintiffs claim that the deposition was not properly introduced, but provide no specifics. *1220 We find no merit in this assignment of error.
The trial court accepted the deposition into evidence without objection. On the front of the deposition, the deputy clerk of court stamped the document with a notation that it was filed in evidence on the day of trial. Both parties referred to the deposition during the trial without objection.
For the foregoing reasons, we affirm the judgment of the trial court. All costs of the appeal are assessed to plaintiffs.
AFFIRMED.