625 So.2d 1090 (1993)
Steven Christopher GRIFFIN, et al.
v.
TENNECO OIL COMPANY and XYZ Insurance Company.
Nos. 91-CA-2475, 92-CA-0247.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1993.
*1091 Ernest E. Barrow, II, Grant & Barrow, Gretna, for appellants Steven C. Griffin and Lynn Griffin.
Shelley Hammond Provosty, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for appellee, MRO Services, Inc.
John G. Gomila, Jr., David R. Nicholson, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellant Tenneco Oil Co.
Before BARRY, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
On October 1, 1985, Steven Griffin was employed by MRO Services, Inc. working at the Chalmette Refinery operated by Tenneco Oil Company. Tenneco contracted with MRO to perform certain construction and expansion activities at the refinery. During operations designed to clear all flammable materials from the plant's fuel gas line prior to cutting the line so that it could be rerouted, a fire broke out and Griffin, along with two other employees, was burned.
PROCEDURAL HISTORY:
All three employees filed suit against Tenneco for compensatory damages. Those suits were ultimately settled. Griffin subsequently amended his petition demanding exemplary damages alleging Tenneco's wanton and reckless disregard for public safety in the handling, transportation or storage of hazardous substances pursuant to Civil Code Article 2315.3. Tenneco filed a third party claim against MRO seeking indemnity pursuant to the service contract between them. MRO denied indemnity for either defense costs or damages.[1]
Griffin's suit for exemplary damages proceeded to trial on December 10, 1990.[2] The third party demand by Tenneco against MRO was severed to be tried separately.
*1092 The jury returned a verdict in favor of Tenneco. Cross-motions for summary judgment were then filed by MRO and Tenneco relating to the indemnity issue. The issue presented in those motions was whether MRO must indemnify Tenneco for the costs and expenses incurred in defending Griffin's suit for exemplary damages. MRO's motion was granted and Tenneco's was denied. Both Griffin and Tenneco appeal.
Griffin asserts the following errors:
1) The trial court erred in allowing Mr. Lawrence Raymond Hess to testify as to his opinion about industry standards;
2) The trial court erred in qualifying Mr. Hess as a "Lay Expert;"
3) The trial court erred in instructing counsel not to object during closing argument;
4) The trial court erred in allowing defense counsel, in closing argument, to repeatedly equate the term "care" to "reckless and wanton;"
5) The trial court erred in refusing to order a new trial considering the errors cited in assignment of error 1 and 4, above;
In its appeal, Tenneco argues that the trial court erred in denying its indemnity claim against MRO for defense costs.
ASSIGNMENTS OF ERROR 1 AND 2:
Plaintiff asserts the trial court erred by allowing Lawrence Raymond Hess to give "expert" testimony as to industry standards. Plaintiff argues that Hess was called as a fact witness and during cross examination, defense counsel announced he would offer Hess as an expert. Plaintiff's counsel objected on two grounds. First, Hess was not identified in the Court's pre-trial order as an expert witness and therefore plaintiff was "ambushed" in that he had no opportunity for pre-trial discovery. Second, plaintiff complains that Hess, as an employee of Tenneco at the time of the accident, had an interest in preserving his reputation as Supervisor of Safety and Loss Control and thus was not qualified to testify.
During plaintiff's case in chief, Mr. Lawrence Hess, Tenneco's Supervisor of Safety and Loss Control, was called by plaintiff as a fact witness. On cross-examination by Tenneco, the following transpired with respect to plaintiff's first complaint.
"BY MR. GOMILA: (Tenneco's attorney)
Q. Before October 1 of '85, are you aware of what the industry in general was doing insofar as hot work permits procedures?
MR. BARROW:
Objection, Your Honor, He's calling for an expert opinion and conclusion.
BY THE COURT:
Not necessarily. If he has the particular knowledge, Mr. Barrow. I understand his position over there is safety managerI don't know. I forgot the exact terminology.
MR. GOMILA:
Safety and loss control director.
BY THE COURT:
Safety and loss control director.
MR. BARROW:
That doesn't necessarily qualify him as an expert.
BY THE COURT:
He's not asking for an opinion at this time. He's asking for a fact.
MR. BARROW:
Yes, sir.
BY THE COURT:
As I understand it, all he wants to know is a particular fact. If he gets to asking an opinion, then, of course, I will sustain your objection.
MR. GOMILA:
I may seek to qualify him at that time.
BY THE COURT:
Go ahead. You can ask him a fact question.
* * * * * *
BY MR. GOMILA:
Q. Were you aware of what the industry was doing?
MR. BARROW:
Now, we're talking about an opinion.
MR. GOMILA:
I asked a question that asks for his awareness.

*1093 BY THE COURT:
No, I'm going to sustain that particular portion of it. I think Mr. Barrow is right. I think you crossed the line now.... and now I think what you're asking for is an opinion of what the standard was.
MR. GOMILA:
Not exactly, but I would like to explore that with this witness if you will allow me to qualify him.
BY THE COURT:
You may attempt it.
(Whereupon, Mr. Gomila lays Mr. Hess' qualifications before the jury.)
* * * * * *
MR. GOMILA:
Your Honor, at this time I would offer Mr. Hess as an expert in safety and control loss procedures, fire prevention and fire fighting.
MR. BARROW:
Two objections: one, this witness was never listed, nor was any notice given prior to the moment that he would be an expert witness. Two, now, at the time of this fire, he was in the employ of the defendant and has at the very least risk his opinion and his performance at that time. He certainly has an interest in this matter. In that regard and as such, cannot be regarded as an independent expert and must be regarded as part of the
MR. GOMILA:
I would suggest that argument, Judge, and that has not been brought out on cross-examination.
BY THE COURT:
Gentlemen, this is the way I feel about it: It think that under 701I don't have my code in front of me.
MR. BARROW:
704, Your Honor, I believe.
BY THE COURT:
I think it's been displayed by this Court that under 701 certainly, Mr. Hess has suitable information and experience and training in the field of safety and prevention to give at least a lay opinion, because I believe that information is sufficient
MR. BARROW:
And that he not be qualified as an expert.
BY THE COURT:
Would you listen to me, Mr. Barrow.is suitable to provide the jury with information; and without misleading the jury, I believe he qualifies under all the provisions of 701, and I will qualify him as a lay witness and not as an expert witness.
MR. GOMILA:
Your Honor, I would request that you review 704. I believe you have the number right, whatever the article may be. An expert, as I understand it, is one who has particular training, education and experience sufficient to be of benefit to the trier of fact. I don't think that can be disputed about this witness.
BY THE COURT:
I'm going to qualify him as 701, not 704. You can conduct your examination.
* * * * * *
... Under 701, if a witness is not testifying as an expert, his testimony in the form of opinion is limited to those opinions which are rationally based on conception of the witness and helpful to a clearer understanding for the trier of facts.
MR. BARROW:
That is correct.
BY THE COURT:
I have just declared that I feel that upon hearing the list of qualifications and the information and experience and education that Mr. Hess has benefitted, I feel that he meets that criteria and will be able to render opinion based on the qualifications under Article 701, but not 704. Do we understand?"
PRE-TRIAL ORDER:
Louisiana Code of Civil Procedure Article 1551 allows the trial court to hold pre-trial conferences and to render orders that control "the subsequent course of the action, unless modified at the trial to prevent manifest injustice." In this regard, the trial judge has much discretion in determining whether an order should be modified. Neff v. Rose, 546 So.2d 480 (La.App. 4th Cir.1989), writ denied 551 So.2d 1322 (La.1989). Article *1094 1551 does not require that the witnesses be designated as fact or expert and does not require a listing of the subject matter of the testimony. Curry v. Johnson, 590 So.2d 1213 (La.App. 1st Cir.1991). If a party objects to the offered testimony, a trial judge has great discretion in deciding whether to receive or refuse the testimony objected to on the grounds of failure to abide by the rules, but any doubt must be resolved in favor of receiving the testimony. Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d 568 (La.App. 1st Cir.1989), cert. denied, 558 So.2d 583 (La.1990).
In our opinion there was no abuse of discretion in allowing Hess' testimony despite the fact he was not designated an "expert" on the pre-trial order. Plaintiff was not "ambushed" since he called Hess as his own witness. Certainly he was aware of Hess' position, knowledge and expertise prior to trial.[3]
EXPERT TESTIMONY:
Louisiana Code of Evidence Article 701 limits a non-expert witness' testimony to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue. (emphasis added).
Article 701 rides in tandem with Article 602 and is subject to the balancing test of Article 403.[4] See, C.E. Article 701, comments (c) and (d).
The trial court is vested with much discretion in determining first, which opinion testimony shall be received into evidence and second whether it will be received as "lay" or "expert" testimony.
In the instant case, the record shows that Hess was initially called by plaintiffs, not by Tenneco, and that counsel for plaintiff asked a series of opinion questions relative to Hess' experience in the refining industry, safety and loss control in particular.
On cross-examination, defense counsel also asked questions relative to the issue of safety and prevention based on Hess' experience in the refining industry. Over plaintiff's objection, the trial court allowed Hess to give opinion testimony as a "lay witness" pursuant to Article 701 and not as an "expert" pursuant to Article 704.[5] We find no error in this ruling.
The record supports the conclusion that Hess possessed suitable information, experience and training in the field of safety and prevention to provide a "lay opinion" to the jury. His testimony was certainly relevant in that he possessed direct and personal knowledge of the facts and circumstances *1095 leading to plaintiff's injuries and there is no doubt that it was helpful in the determination of a fact in issue.
Plaintiff's assertion that Hess should not have been allowed to give opinion testimony because of his employment with Tenneco is not supported by any authority. A witnesses' interest in the outcome of a lawsuit has no bearing on the admissibility of his testimony. The jury was well aware of Hess' employment status. The credibility of witnesses is for the trier of fact to determine. Dominici v. Wal-Mart Stores, Inc., 606 So.2d 555 (La.App. 4th Cir.1992).
ASSIGNMENTS OF ERROR 3, 4 AND 5:
Plaintiff asserts the following cumulative errors require that he be granted a new trial:
1) The trial court instructed trial counsel not to object during closing argument thus eliminating counsel's right to participate fully in the trial;
2) The trial court allowed defense counsel during closing argument to repeatedly equate the term "care" to "reckless and wanton" an improper and misleading reference.
3) The trial court allowed defense counsel during closing argument to refer to Mr. Hess' testimony comparing it and his qualifications with that of another witness, John Kennedy;
4) The trial court qualified Mr. Hess as a "lay expert" thus confusing the jury as to the weight of Hess' testimony;
Louisiana Code of Civil Procedure provides the following grounds for granting a new trial:
Article 1972: Peremptory grounds
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Article 1973: Discretionary grounds
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
Plaintiff has produced no evidence to support the granting of a new trial. Plaintiff's complaints relative to Mr. Hess' testimony are without merit. Plaintiff's complaints regarding closing argument are equally without merit.
At the motion for a new trial, the trial court explained what he said at trial; "I generally do not like objections during the closing argument ... The only time I ask that you would voice an objection is if you think it is something critical to your case, ... and I ask the lawyers to keep objection to a minimum." Clearly, there was no instruction by the trial court tantamount to an order forbidding counsel to object. The record shows that plaintiff failed to object to any comments made during closing argument and thus plaintiff has waived his right to complain on appeal. Bush v. Winn-Dixie of Louisiana, Inc., 573 So.2d 508 (La.App. 4th Cir.1990), writ denied 578 So.2d 930 (La. 1991). Furthermore, even had objections been made, we find nothing improper in Tenneco's closing argument.
These assignments of error are without merit.
TENNECO'S APPEAL:
The issue raised by Tenneco is whether MRO, pursuant to its contract with Tenneco, had an obligation to defend Tenneco against plaintiff's exemplary damage claims and therefore must reimburse Tenneco for its litigation expenses in that regard.
The duty to defend is to be determined by an examination of the language of the agreement between the parties and the allegations of the petition. American Home Ins. Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1969); Micelotti v. Karno, 542 So.2d *1096 734 (La.App. 4th Cir.1989).[6]
The applicable portions of the indemnity agreement between MRO and Tenneco read as follows:[7]
"4. Reciprocal Indemnification for Claims of EmployeesNotwithstanding any other provision of this Agreement, OWNER and CONTRACTOR agree to the following indemnification obligations for all losses, costs, and expenses (including but not limited to all defense costs and attorney's fees) of alleged or actual legal liabilities and negotiated settlements for personal injuries, illnesses, or deaths sustained by employees, including liabilities and settlements based on occurrences caused or alleged to be caused by the other party's sole negligence or gross negligence, or involving the concurrent negligence of the other party: (emphasis in original)
* * * * * *
PROVIDED, HOWEVER, that these indemnity obligations shall not apply in cases of injuries, illnesses, or deaths intentionally caused by willful misconduct of employees of either party to this Agreement. (emphasis added)
* * * * * *
6. DefenseEach party to this Agreement agrees to investigate, handle, respond to, provide defense for, and defend any claim or other potential legal liability for which it is responsible under this Agreement's indemnification provisions at its sole expense, and agrees to bear all other related costs and expenses, even if such claim, etc., is groundless, false or fraudulent."
In his third supplemental and amended petition, plaintiff added the following allegation:
"Petitioner, Steven Christopher Griffin, was injured in this explosion due to the wanton and reckless disregard for his safety and the safety of the public in the storage, handling and transportation of this hazardous substance that ignited, and due to the wanton and reckless disregard for the safety of Steven Christopher Griffin, he is entitled to exemplary damages in the sum of FIVE MILLION AND NO/100 ($5,000,000.00) DOLLARS, said damages should be awarded as the authority of LSA-C.C. Art. 2315.3 which provides for the award of exemplary damages for the wanton and reckless disregard of the defendant herein for public safety in the storage, handling or transportation of hazardous or toxic substances." (emphasis added)
While the contract of indemnity clearly extends a reciprocal defense obligation for employees' injuries caused or alleged to be caused by either party's negligence, it excludes those situations in which the injuries are "intentionally caused by willful misconduct of employees" of either party.
MRO argues that the term "willful misconduct" as used in the exclusion clause of the indemnity agreement is the operative language to be considered. It equates that language with the "wanton and reckless" allegations in plaintiff's petition and thus argues there should be no indemnity obligation. We disagree.
When faced with Tenneco's exception of no cause of action to the claim for exemplary damages, this Court held that the terms "willful" "wanton" and "reckless" apply to fault which lies between intent to do wrong and the reasonable risk of harm associated with mere negligence. Griffin v. Tenneco, 531 So.2d 498 (La.App. 4th Cir.1988). In Bourgeois v. State Farm Mutual Automobile, 562 So.2d 1177 (La.App. 4th Cir.1990), writ denied 567 So.2d 611 (La.1990) we defined the term "wanton and reckless" as used in Civil Code Article 2315.4[8] to mean conduct somewhere between an intent to do wrong and mere negligence.
An intentional tort has been defined by our Supreme Court as being one where the actor *1097 consciously desires the physical result of his act or knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to the result. Bazley v. Tortorich, 397 So.2d 475 (La.1981). This is the conduct which we conclude is excluded from the indemnity agreement.
In order to reach this conclusion, it is necessary that the entirety of the indemnity provisions be considered together. C.C. Art. 2059. The general indemnity provisions in paragraph 17.1[9] provides that Tenneco will be indemnified by MRO for all claims brought as a result of MRO's contract work. There is no doubt that this includes claims based on negligence and gross negligence. The reciprocal indemnity provision in paragraph 4, cited supra, for employees' claims specifically includes claims based on negligence or gross negligence. Thus because all forms of negligence are subject to indemnification, it logically follows that to give the exclusionary clause a sensible meaning, it must be interpreted as excluding intentional acts by the employees of either party.
In determining what constitutes an excluded intentional act, we cannot isolate the phrase "willful misconduct" as MRO suggests. In our opinion, and within the context of the agreement before us, death or injury "intentionally caused by willful misconduct" means an intentional act as defined in Bazley, supra, and not the exemplary damage allegations of plaintiff's petition. Any other interpretation would result in a conflict with the other indemnity provisions of the contract. All claims resulting from negligence and/or gross negligence are included. It seems reasonable that the injuries resulting from intentional acts was intended to be excluded. Plaintiff's claim is not one for intentional acts, but for punitive damages for conduct falling somewhere between simple negligence and intentional wrong doing. Although it did not specifically say so, it is highly probable that the legislature meant that conduct to be gross negligence, which is specifically included in the indemnity provisions.
MRO also argues that because a claim for exemplary damages is not specifically described in the indemnity provisions, there can be no implied intent to include it.[10] We disagree.
As we previously noted, paragraph 17.1 provides indemnity for any and all claims and causes of action of any kind. The language of the agreement is clear and without ambiguity. The all inclusive language satisfies us of the parties intent to include every type of claim except a claim resulting from an employee's intentional act.
Accordingly, the judgment of the trial court in favor of Tenneco and against plaintiff is affirmed. The judgment in favor of MRO is reversed and summary judgment is granted in favor of Tenneco on its third party indemnity claim for defense costs.
The matter is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Prior to the compensatory damage claims being settled MRO also denied it owed Tenneco any indemnity. This Court held that indemnity for the compensatory damage claims was owed. Griffin v. Tenneco Oil Company, 519 So.2d 1194 (La.App. 4th Cir.1988), writ denied 521 So.2d 1154 (La.1988).
[2] This matter was originally tried in January of 1990 and Tenneco was cast in judgment. However a new trial was granted.
[3] On direct, Hess was asked: whether or not it was necessary for an individual who was steaming a fuel gas line to secure a hot work permit; what procedure should be reviewed to determine whether or not a line was being steamed properly in compliance with Tenneco's directives; what workers are allowed to do pursuant to Tenneco's hot work permits and what is necessary for hot work to resume if a hot work permit is canceled; whether it was "proper" pursuant to Tenneco's "rules and guidelines" for a stillman to issue an order to resume hot work without checking certain factors. After being directed to answer the question, Hess expressed his opinion as to the proper procedure for resuming hot work without a new written hot work permit.
[4] Code of Evidence Article 602 states:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This Article is subject to the provisions of Article 703, relating to opinion testimony by expert witnesses."
Code of Evidence Article 403 states:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."
[5] Plaintiff makes much of the fact that in the court reporter's first transcript, the judge referred to Hess as a "lay expert" thus causing the jury to give his testimony more weight in determining the ultimate issue of the case. We disagree. The trial court gave a clear explanation in the presence of the jury as to why Hess was allowed to testify. The trial court clearly stated that Hess was not being qualified as an expert. Thus, we do not find that the trial court's reference to Hess as a "lay expert" led the jury to give more weight to Hess' testimony as opposed to that of other witnesses.
[6] We recognize that both of these cases deal with the insurer's duty to defend, however we believe the determination of a duty to defend under an indemnification agreement is the same.
[7] These provisions are found in Exhibit A-2 attached to the construction contract.
[8] Civil Code Article 2315.4 provides for exemplary damages where injuries are sustained by the wanton or reckless disregard of the safety of others by an intoxicated driver.
[9] Paragraph 17.1 is found in Exhibit "A" to the contract. It provides:

"The CONTRACTOR agrees to protect, indemnify and hold the OWNER free and harmless from and against any and all claims, liens, demands, and causes of action of every kind and character, including the amounts of judgments, penalties, interest, court costs and legal fees incurred by the OWNER in defense of same arising in favor of governmental agencies or third parties (including employees of the CONTRACTOR or subcontractor) on account of taxes, claims, liens, debts, personal injuries, death, or damages to rented equipment or other property, and without limitation by enumeration, all other claims or demands of every character occurring or in anywise incident to, in connection with or arising out of the work to be performed by the CONTRACTOR hereunder, except insofar as responsibility may be expressly assumed by the OWNER under the provisions of this Contract." (emphasis added)
[10] MRO cites Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977) in support of its assertion that if exemplary damages are not expressly included in an indemnity agreement, they must be found to be excluded. We disagree. Polozola does not apply. Exemplary damages were not the subject matter of Polozola. Rather, the Court found that a contract of indemnity will not be construed to include losses resulting from one's own negligence unless such intention was expressed in unequivocal terms.