STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1151

WASTE MANAGEMENT OF LOUISIANA, LLC

VERSUS

TADLOCK PIPE & EQUIPMENT, INC.

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 99-6723
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE
**********

**GLENN B. GREMILLION
JUDGE**

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**Amy Groves Lowe**
**Taylor, Porter, Brooks & Phillips, L.L.P.**
**P. O. Box 2471**
**Baton Rouge, LA 70821**
**(225) 387-3221**
**Counsel for Plaintiff/Appellant**
        **Waste Management of Louisiana, LLC**

**Milo A. Nickel, Jr.**
**Nickel & Caballero**
**500 Kirby St., Suite 201**
**Lake Charles, LA 70601**
**(337) 433-8278**
**Counsel for Defendant/Appellee**
        **Tadlock Pipe & Equipment, Inc.**

GREMILLION, Judge.

The plaintiff, Waste Management of Louisiana, L.L.C., appeals the judgment of the trial court dismissing its claim against the defendant, Tadlock Pipe & Equipment, Inc. For the following reasons, we affirm.

## FACTS

Waste Management is in the business of collecting waste from both commercial and residential customers. However, it limits the waste it collects to only nonhazardous waste. On December 9, 1998, one of its trailers containing both residential and commercial waste was rejected by the Jefferson Davis landfill after it triggered a positive reading for radioactive material. Upon its rejection, Waste Management returned the trailer to its Lake Charles pickup station and commenced an investigation into the nature of the radioactive material and its point of origin. American Radiation Services (ARS) determined that the radioactive material consisted of pipe caps; white, plastic five gallon buckets; visquine; a portion of a two by four board; and black grit. An analysis determined that the radioactive material contained on these items was NORM (naturally occurring radioactive material), consisting of Radium 226 and Radium 228, and the daughter products of these two isotopes. In addition to ARS, Waste Management also hired Phillip Services/Louisiana, Inc. to evaluate the load and to arrange to decontaminate and segregate the contaminated material. Finally, it hired Waste Control Specialists, L.L.C. to dispose of the contaminated material. In all, Waste Management spent $56,174.16 as a result of the December 9, 1998 incident.

1

Once the radioactive items were identified, Waste Management set out to determine which of its customers was responsible for placing the items in its waste container. Upon a recommendation from ARS, it limited its investigation to those customers in the oil and gas industry who were serviced by the waste collection trucks determined to have emptied their loads into the subject trailer. After visiting numerous customers, it determined that only Tadlock Pipe was found to have white plastic buckets, visquine, pipe caps, boards, and black grit at its location. Thus, Waste Management determined that the radioactive items originated from Tadlock Pipe.

Waste Management filed suit against Tadlock Pipe alleging the breach of its Service Agreement which provided that the waste materials collected by it would contain no radioactive materials. The Service Agreement further provided that upon the breach of this warranty, Tadlock Pipe would indemnify, defend, and hold harmless Waste Management from all damages arising from its breach. Tadlock Pipe denied these allegations. The matter proceeded to a bench trial, after which the trial court rendered judgment in favor of Tadlock Pipe finding that Waste Management failed to prove that it was responsible for the radioactive materials. This appeal by Waste Management followed.

**ISSUES**

Waste Management raises eight assignments of error on appeal. In summary, it argues that the trial court erred in refusing to allow Dean Arabie to testify as a witness at the trial, that the trial court's refusal was prejudicial to its case and resulted in a reversible error necessitating a de novo review of the record. It further

2

argues that the trial court was clearly wrong in finding that it failed to prove that Tadlock Pipe was the source of the contaminated items and in failing to award it damages.

## ARABIE'S TESTIMONY

In its first assignment of error, Waste Management argues that the trial court erred in refusing to allow Arabie to testify. Although admitting that it failed to include Arabie's name on its two witness lists, it argues that a substantial injustice would occur if it were not allowed to present his testimony. It claims that Tadlock Pipe would not be surprised by his testimony since his name was included in its February 10, 2000 response to interrogatories propounded by Tadlock Pipe, which listed persons possibly having knowledge of the matter.

At trial, Tadlock Pipe objected to Waste Management calling Arabie as a witness because it failed to include his name on either of its witness lists submitted prior to trial. The trial court's December 13, 2002 pre-trial order set a January 10, 2003 deadline for the exchange of witnesses and the identification of exhibits to be used in evidence. Waste Management's January 8, 2003 witness list did not include Arabie as a potential witness. Although this case was originally scheduled for trial on February 10, 2003, it was apparently continued at the request of Tadlock Pipe. The matter was then rescheduled for a bench trial on March 30, 2003. On March 22, 2003, Waste Management resubmitted its original witness list to the trial court.

Waste Management called Arabie as a witness after calling David Tadlock on cross-examination during its case in chief. At that point, counsel for Tadlock Pipe objected to him being called as he had not been included in either of

3

Waste Management's pre-trial witness lists. Counsel for Waste Management argued that Arabie's name had been included in its February 10, 2000 answers to interrogatories as a person who might have knowledge of this incident. She further argued that she was calling Arabie as an impeachment witness in order to refute David Tadlock's testimony. After listening to argument by both sides, the trial court sustained Tadlock Pipe's objection stating that David Tadlock had been called by Waste Management in its case in chief and that the trial court did not think this was the proper time for Waste Management to attack his testimony.

After the close of Waste Management's case, Tadlock Pipe presented its evidence, but did not call David Tadlock on direct examination. After Tadlock Pipe rested its case, Waste Management attempted to call Arabie as a rebuttal witness in order to contradict David Tadlock's earlier testimony. The trial court refused to change its earlier ruling. Thus, Waste Management made a proffer of his testimony.

> A trial judge has great discretion in conducting a trial. The judge is required to do so in an orderly, expeditious manner and to control proceedings so that justice is done. LSA-C.C.P. art. 1631; *Pino v. Gauthier*, 633 So.2d 638, 648 (La.App. 1st Cir.1993), *writs denied*, 94-0243 and 94-0260 (La.3/18/94), 634 So.2d 858 and 859; *Hurts v. Woodis*, 95-2166 (La.App. 1st Cir.6/28/96), 676 So.2d 1166, 1174. The judge's discretion includes the admissibility of a witness's testimony. *Combs v. Hartford Ins. Co.*, 544 So.2d 583, 586 (La.App. 1st Cir.), *writ denied*, 550 So.2d 630 (La.1989). It is only upon a showing of a gross abuse of discretion that appellate courts have intervened. *Pino*, 633 So.2d at 648.

*Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. Partnership*, 01-2812, pp. 7-8 (La.App. 1 Cir. 12/30/02), 839 So.2d 82, 91, *writ denied*, 03-0306 (La. 4/4/03), 840 So.2d 1219. Further, in *Robinson v. Apria Healthcare, Inc.*, 38,438, p. 13 (La.App. 2 Cir. 5/27/04), 874 So.2d 418, 426, the appellate court stated with regard

4

to pre-trial orders:

> La. C.C.P. art. 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the items of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. The pretrial order controls the subsequent course of action, though it can be modified at trial to prevent substantial injustice. *Vernon v. Wade Correctional Center*, 26,053 (La.App.2d Cir.8/19/94). The trier of fact is given broad discretion to determine whether to modify a pretrial order. This discretion is controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly. Absent an abuse of discretion, the trier of fact's decision will be upheld. *Vernon v. Wade Correctional Center, supra.*

In its argument to the trial court, Waste Management called Arabie both as an impeachment and a rebuttal witness. In its appellate brief, it argues that Arabie is an impeachment witness, whose testimony was offered to refute that given by David Tadlock. No matter the type of witness, we find that the trial court did not abuse its discretion in refusing his testimony. The proffered testimony clearly goes to the main issue of whether Tadlock Pipe was disposing of contaminated waste, whether it knew that it was disposing of such waste, and the actions it took to avoid being discovered as the source of the waste at issue. Thus, we conclude that Waste Management clearly intended Arabie's testimony as direct evidence of the issue being litigated, rather than the impeachment evidence it claims. *See Robinson*, 874 So.2d 418. Accordingly, we find that his name should have been included on the pre-trial witness list and that the trial court did not err in refusing to allow him to testify at trial.

We further find that the trial court correctly refused to allow Arabie to testify as a rebuttal witness since Tadlock Pipe did not call David Tadlock during its

5

case in chief. Rebuttal evidence by a plaintiff is limited to countering that evidence raised by a defendant during their case in chief. *Roberts v. Owens-Corning Fiberglass Corp.*, 03-248 (La.App. 1 Cir. 4/2/04), 878 So.2d 631; La.Code Evid. art. 611(E). Since David Tadlock was never called on direct examination by Tadlock Pipe, he adduced no evidence on direct examination which could be countered. It moves us little to hear Waste Management bemoan the fact Tadlock Pipe failed to call any witness professing to have knowledge as to possible radioactive materials being placed in its waste container. Only David Tadlock's testimony, albeit under cross-examination, touched on this salient issue. The essence of Tadlock Pipe's case is that it did not place radioactive materials in the container. It did not have to prove that it did not commit those acts. Waste Management had to prove that it did. Arabie possessed information that tended to prove that Tadlock Pipe did or did not do things that may have shown it placed the radioactive materials in the container. This is evidence that should have been presented in Waste Managment's case in chief as it is neither impeachment testimony nor rebuttal testimony. Accordingly, this whole matter could have been avoided had Waste Management included Arabie, arguably its most important witness, on its pre-trial witness list.

Based on our finding, we are precluded from conducting a de novo review of the record as requested by Waste Management. Thus, we are relegated to a manifest error review of the matter. After conducting a thorough review of the record, we cannot say the trial court was manifestly erroneous or clearly wrong in finding that Waste Management failed to prove that Tadlock Pipe was responsible for the radioactive materials in its container. As such, its remaining assignments of error

6

are dismissed as being without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Waste Management of Louisiana, L.L.C.

**AFFIRMED.**