STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**13-1143**


**DORIS DOYLE**

**VERSUS**

**LIWLIWA RAMOS, M.D., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-5761
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and James T. Genovese, Judges.


**AFFIRMED.**

**John L. Hammons**
**Nelson & Hammons**
**705 Milam Street**
**Shreveport, LA   71101**
**(318) 227-2401**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Doris Doyle**

**James R. Shelton**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Liwliwa Ramos, M.D.**

**AMY, Judge.**

The plaintiff alleged that the defendant internal medicine physician had undertaken management of her breast health care and that the defendant deviated from the applicable standard of care by an alleged failure to follow a radiologist's recommendation for a surgical biopsy following a mammogram. The plaintiff alleged that this breach, along with other alleged deviations, resulted in a delayed diagnosis of breast cancer and a lost chance of survival. The plaintiff filed suit seeking damages allegedly stemming from that delayed diagnosis. After a jury found in favor of the defendant, the trial court denied the plaintiff's motion for judgment notwithstanding the verdict. The plaintiff appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The record establishes that the plaintiff, Doris Doyle, became a primary care patient of the defendant, Dr. Liwliwa Ramos, an internal medicine physician, in 1999. During that course of treatment in 2003, Dr. Ramos recommended, and Ms. Doyle underwent, a screening mammogram. The report of that 2003 mammogram resulted in the radiologist's impression of "negative examination." Ms. Doyle returned to Dr. Ramos's office for several, unrelated appointments. During a March 9, 2005 visit, Dr. Ramos again referred Ms. Doyle for a mammogram. Although the mammogram appointment was scheduled or rescheduled, Ms. Doyle did not undergo the test during that time period.

The instant dispute stems from a July 31, 2006 visit during which Dr. Ramos again recommended a mammogram. As a result, a mammogram was scheduled for August 7, 2006, at West Calcasieu-Cameron Hospital. However, Ms. Doyle did not have the mammogram performed at that time. Instead, the mammogram was

performed on September 11, 2006.[1]  The radiologist's report from the September 2006 report indicated, in pertinent part, that:

> Comparison is made of the previous examination of 3 June 2003. Since that time the patient has developed two areas of architectural distortion present in the left breast.  One appears to be located in the upper outer quadrant and one in the medial one-half of the breast. Both of these are new when compared to the previous examination. They appear to be of increased density with spiculated borders and would be highly suspicious for malignancy.  I would recommend obtaining a surgical consultation for biopsy of these areas.
>
> . . . .
>
> IMPRESSION:
> TWO AREAS OF ARCHITECTURAL DISTORTION HAVE DEVELOPED IN THE LEFT BREAST WHICH ARE FELT TO BE HIGHLY SUSPICIOUS FOR MALIGNANCY.  I WOULD RECOMMEND OBTAINING A SURGICAL CONSULTATION FOR BIOPSY OF THESE AREAS.

According to the West Cal-Cam Hospital's Director of Radiology and Nuclear Medicine, hospital procedure dictated that the report would be delivered via facsimile to the referring physician and a letter sent to the patient.  However, Dr. Ramos denied having received such a report, and Ms. Doyle denied receiving a letter regarding the suspicious September 2006 mammogram.

Without apparent knowledge of the radiologist's report by either the plaintiff or the defendant, Ms. Doyle returned to Dr. Ramos's office several times during the first months of 2007.  Subsequently, during a July 2007 visit, Dr. Ramos learned that Ms. Doyle had undergone the September 2006 mammogram.  After obtaining the radiologist's report from the mammogram, in August 2007, Dr. Ramos ordered subsequent testing.  Ultimately, in September 2007, Ms. Doyle underwent a biopsy and modified radical mastectomy of the left breast.  Testing

---

[1] When asked about the re-scheduling of the mammograms, the plaintiff explained that her work schedule precluded her from honoring the appointments.

also revealed a metastatic lymph node. Ms. Doyle underwent subsequent radiation and chemotherapy treatment.

Thereafter, Ms. Doyle instituted a proceeding before a Medical Review Panel regarding the treatment provided by Dr. Ramos, the radiologist interpreting the September 2006 mammogram, and the West Cal-Cam Hospital. The Medical Review Panel concluded that the evidence did not support Ms. Doyle's claim that the health care providers failed to comply with the appropriate standards of care. In turn, Ms. Doyle filed the petition instituting this matter, again naming Dr. Ramos, the radiologist, and the hospital as defendants and alleging that the delay in treatment following the September 2006 mammogram resulted in a lost chance of survival. The latter two defendants were subsequently dismissed, however.

As the matter proceeded to a jury trial, Ms. Doyle alleged that Dr. Ramos breached the standard of care by failing to timely act upon the September 2006 radiologist's report recommending surgical consultation for biopsy following the abnormal mammogram. Ms. Doyle contended that, even if Dr. Ramos's office did not receive the September 2006 report, Dr. Ramos's staff failed to satisfy office protocol for following up on test results. Additionally, Ms. Doyle suggested that Dr. Ramos failed to perform breast examinations during her visit and further failed to instruct her on self-breast examination. Such deviations, Ms. Doyle alleged, led to an eleven-month delay in diagnosis and progression of the breast cancer to the point of metastasis. Dr. Ramos noted at trial, however, that Ms. Doyle failed to have the mammogram completed at the time it was originally scheduled. Dr. Ramos contends that she had no notice that the mammogram was thereafter re-scheduled or that it had been completed.

The jury returned a verdict in favor of Dr. Ramos. Thereafter, Ms. Doyle filed a motion for judgment notwithstanding the verdict, which the trial court denied, finding that the evidence could have supported a verdict in favor of either party.

Ms. Doyle appeals, assigning the following as error:

I. The jury was manifestly erroneous in concluding that appellant had failed to prove by a preponderance of the evidence that Dr. Ramos breached the applicable standard of care which was a proximate cause of Ms. Doyle's injuries.

II. The trial court erred in failing to grant appellant's Motion for Judgment Notwithstanding the Verdict.

**Discussion**

*Trial on the Merits*

Burden of Proof

Louisiana Revised Statutes 9:2794 sets forth the burden of proof for medical malpractice actions, stating, in part, that:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., . . . the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, . . . within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

4

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

A fact finder's determinations regarding whether a plaintiff proved the elements of the burden of proof of La.R.S. 9:2794 are findings of fact. *Salvant v. State*, 05-2126 (La. 7/6/06), 935 So.2d 646. As such, an appellate court reviews the entirety of the record and will only reverse a fact finder's determination of fact upon determining that a reasonable basis does not exist for the finding and that the fact finder was clearly wrong or manifestly erroneous. *Id.* In the event there are "two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* at 650.

Verdict Form

The jury verdict sheet used in the present matter inquired:

1. Do you find, by a preponderance of the evidence, that Dr. Liwliwa Ramos breached the applicable standard of care owed to Doris Doyle, and if so, was this breach a proximate cause of injuries, if any, to Doris Doyle?

(Capitalization omitted). The jury indicated "NO" in answer to the question. Ms. Doyle recognizes that this interrogatory combined the breach of the standard of care element with that of causation, but that it omitted the question of whether the plaintiff proved the applicable standard of care. She contends that such an omission precludes a determination on review as to the jury's actual conclusions. Ms. Doyle suggests that such confusion warrants a de novo review. We find no merit in that assertion.

While a misleading or confusing jury interrogatory may constitute reversible error, an appellate court uses the manifest error standard of review unless the interrogatories are sufficiently inadequate or incorrect so as to prevent the jury

5

from reaching a verdict based on the law and the facts. *Ardoin v. McKay*, 06-171, (La.App. 3 Cir. 9/27/06), 939 So.2d 698, *writ denied*, 06-2606 (La. 1/8/07), 948 So.2d 126. In this case, we find no such deficiency indicating that the jury was unable to return a verdict based on the law and facts. Although the interrogatory combined the applicable elements, and otherwise referred to an "applicable" standard of care rather than inquiring whether Ms. Doyle specifically demonstrated the standard of care, it is clear that, in total, the jury concluded that Ms. Doyle failed to sustain her burden of proof. *See Bourque v. Essex Ins. Co.*, 12-810 (La. 6/15/12), 90 So.3d 1031. As reviewed below, the record permitted such a verdict. Additionally, we point out that the record contains no indication that Ms. Doyle objected to the jury verdict sheet as submitted to the jury. *See Kose v. Cablevision of Shreveport*, 32,855 (La.App. 2 Cir. 4/5/00), 755 So.2d 1039, *writ denied*, 00-1177 (La. 6/16/00), 764 So.2d 964, *writ denied*, 00-1289 (La. 6/16/00), 765 So.2d 340. Rather, the transcript indicates that Ms. Doyle's counsel had "no objections to the Verdict Form[.]

Accordingly, we turn to review of Ms. Doyle's central contention on appeal.

Merits

In questioning the jury's verdict, Ms. Doyle returns to the assertion that the evidence demonstrated that Dr. Ramos breached the applicable standard of care in various respects. She notes that Dr. Sheldon Kottle, her expert in the field of internal medicine, nephrology, public health, and hypertension found that Dr. Ramos failed to apply the applicable standard in: 1) failing to perform periodic breast examinations of Ms. Doyle; 2) failing to teach Ms. Doyle how to conduct her own regular self-breast exams; and 3) failing to follow up on the ordered mammogram. Ms. Doyle asserts that, at trial, Dr. Ramos judicially confessed that

6

she breached these standards. In light of that confession, Ms. Doyle argues, the evidence regarding causation is clear. Here, Ms. Doyle points to her expert in the fields of obstetrics and gynecology, Dr. William K. Hardin, Sr., who explained that the eleven-month period between the September 2006 mammogram and the eventual diagnosis and treatment contributed to the tripling of the mass and the metastasis to the lymph node.

Notwithstanding the jury's prerogative to reject Ms. Doyle's experts' opinions in their entirety, we turn to consideration of the various alleged breaches of the standard of care. First, Ms. Doyle testified that Dr. Ramos never performed a breast exam during her various office visits. Dr. Ramos admitted at trial that she had not, in fact, performed such an exam during the period of concern. However, Dr. Ramos further explained that: "I usually offer breast exams. I usually actually do breast exams not only on those who come in for wellness exams, but also especially for those who are refusing mammogram. Unfortunately, most, if not all of these patients refusing - - refusing for mammogram, usually also refuses [sic] breast exam." Dr. Ramos acknowledged that she had not documented Ms. Doyle's refusal of such an exam.

In addition to the fact that the jury could have credited Dr. Ramos's account of the offer and refusal of breast examinations, the jury further heard from Dr. Lowell Anthony, Dr. Ramos's expert in the fields of internal medicine and medical oncology. When asked whether he would consider such breast examinations to be part of the standard of care for a clinician undertaking a patient's breast care, Dr. Anthony explained that he "would not consider it to be." Certainly, evaluation of expert opinion is a matter left to the fact finder. *See Fontenot v. Patterson Ins.*, 09-

669 (La. 10/20/09), 23 So.3d 259. Additionally, however, the jury could have rejected an argument that such a breach caused the delay in diagnosis.

Similarly, with regard to Ms. Doyle's assertion that Dr. Ramos failed to teach her how to perform a self-breast exam, we note that, when asked if she had taught Ms. Doyle how to perform such a test, Dr. Ramos explained: "I can't teach someone breast exam [sic] if they don't allow me to do breast exam. I usually teach them how to do it when I'm doing it." Further, when Dr. Anthony was asked whether he was of the opinion that "teaching a woman how to do self breast exams is not part of the standard of care for the clinician undertaking breast care management[,]" he responded: "Correct. Correct." Additionally, and as with the physician-performed breast exams, there was no evidence requiring a finding that a failure to instruct as to self-breast exams again contributed to the delay in diagnosis.[2]

Finally, we turn to Ms. Doyle's central argument at trial, i.e., that Dr. Ramos's failure to follow up on her July 31, 2006 order for a mammogram breached the applicable standard of care and, ultimately, caused the progression of the breast cancer. On this point, the jury heard evidence indicating that upon the order of the mammogram, Dr. Ramos scheduled Ms. Doyle's mammogram for August 7, 2006. Yet, Ms. Doyle did not attend that appointment and, instead, re-scheduled that appointment for the September 2006 date to better comport with her work schedule. This pattern was consistent with Ms. Doyle's previous pattern of not obtaining a mammogram as recommended by Dr. Ramos. In this particular instance, Dr. Ramos explained that her staff will follow up on an order of a

---

[2] We note, too, that Ms. Ramos testified that she did, in fact, perform self-examinations on occasion, even without instruction.

mammogram within one week of its scheduled date. While Dr. Ramos explained that her staff did not recall whether this particular test was followed up on within that period in light of the period of time up to trial, it is clear that the jury was aware that such a follow up would have indicated only that Ms. Doyle did not attend the appointment. There is no indication, otherwise, that Dr. Ramos became aware that the appointment was re-scheduled or that a September 2006 report was generated. No documentation indicated that Dr. Ramos's office received that report from the hospital. Instead, the evidence reflected uncertainty regarding whether the radiologist's report and the corresponding letter to Ms. Doyle were delivered.[3]

Additionally, Dr. Ramos expressed to the jury that Ms. Doyle had a history of not timely complying with her recommendations regarding mammogram screening. On this point, Dr. Peter Warren Karam, Dr. Ramos's expert in internal medicine, explained the process of an ordering physician's tracking of the results of an ordered test and stated that "if you did not receive the results and you

---

[3] The Director of Radiology and Nuclear Medicine from the hospital, Jerry W. Peloquin, II, explained that the facility's Picture Archival and Communication System initiates the sending of a facsimile of the radiologist's report to the referring physician upon the report's transcription. Mr. Peloquin explained that, in reviewing the hospital's documentation, he found no indication that there had been a problem with the transmittal.

However, Mr. Peloquin also testified that the hospital had a system in place where the mammography technicians followed up on abnormal mammograms with a telephone call to the referring physician's office. He explained that, to his knowledge, all reasonable efforts were made to contact the physician's office "with no resolution as to what took place with the patient." He explained that a letter was also mailed out to the patient, but that it was not sent by certified mail.

On this point, the radiologist producing the report also testified generally regarding the hospital's follow-up procedure. He explained that a suspicious mammogram such as that involved in this case would be listed in a booklet maintained by the mammogram technicians. Those technicians were responsible for contacting the referring physician in order to confirm that the information had been received. The radiologist explained that when this matter was filed, he obtained the booklet and that it was his understanding that the patients listed were "crossed off" when the physician's office was contacted and confirmation that subsequent treatment would be pursued. Although other patients listed in the book were crossed off, Ms. Doyle's name was not.

repetitively tracked it, . . . it would lead you to believe that it probably just wasn't done again[.]" In light of Ms. Doyle's history of irregular mammogram compliance and the confusion surrounding the delivery of the radiologist's report from the September 11, 2006 mammogram, we conclude that the jury was not required to find that the plaintiff demonstrated a breach of standard of care regarding the follow up to the mammogram. Instead, the jury could have found the evidence on this point unpersuasive. We do not disturb any such credibility determination.

Further, and although Ms. Doyle's expert testified regarding the progression of the breast cancer during the subject eleven-month period, it is noteworthy that Dr. Ramos presented evidence regarding causation as well. Dr. Anthony explained to the jury that, in his opinion, even if the point of diagnosis had been made at the time of the radiologist's report, in September 2006, Ms. Doyle's diagnosis would have been the same. He suggested that, even with an earlier diagnosis, Ms. Doyle would have required a mastectomy and would have been treated with both radiation and chemotherapy. Again, to the extent the jury may have relied on this expert opinion, we leave that determination undisturbed.

For these reasons, we find that the jury's verdict is supported by the record. Accordingly, this assignment of error lacks merit.

*Motion for Judgment Notwithstanding the Verdict*

Finally, we note here that Ms. Doyle specified the trial court's denial of her motion for JNOV as error. That assignment is not separately briefed, however, and may therefore be deemed abandoned pursuant to Uniform Rules—Courts of Appeal, Rule 212.4. Additionally, as noted above, we have found that the jury's verdict is supported by the record. *See Joseph v. Broussard Rice Mill, Inc.*, 00-

628, p. 5 (La. 10/30/00), 772 So.2d 94, 99 (wherein the supreme court explained that, on review of a denial of a motion for JNOV, an appellate court considers whether "the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict[.]")

**DECREE**

For the foregoing reasons, the trial court's judgment is affirmed. All costs of this proceeding are assessed to the plaintiff—appellant, Doris Doyle.

**AFFIRMED.**