STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-124

CONNIE JORDAN

VERSUS

RAPIDES REGIONAL MEDICAL
CENTER, ET AL

\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, DOCKET NO. 238,992
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.

AFFIRMED.

John L. Hammons
Nelson & Hammons
A Professional Law Corporation
705 Milam Street
Shreveport, Louisiana 71101
(318) 227-2401
COUNSEL FOR PLAINTIFF/APPELLANT:
    Connie Jordan

**Nicholas Gachassin, Jr.**
**Nicholas Gachassin, III**
**Gary J. Delahoussaye**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, Louisiana  70598**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Dr. Robert Kendrick**

**GENOVESE, Judge.**

In this medical malpractice case, Plaintiff, Connie Jordan, appeals a jury verdict rejecting her claims for damages asserted against Defendant, Robert Kendrick, M.D. Mrs. Jordan also appeals the trial judge's rulings on certain evidentiary matters. For the following reasons, we affirm.

### STATEMENT OF THE CASE

This litigation originates from the death of Mrs. Jordan's son, Michael Leblanc,[1] and the medical treatment he received from Dr. Kendrick, the emergency room physician at Rapides Regional Medical Center (RRMC) in Alexandria, Louisiana, on March 25, 2008. Mr. Leblanc was transported via ambulance to the emergency room of RRMC due to the suspicion that he had inhaled gastric contents after vomiting sometime around 3:30 a.m. He arrived at RRMC at 6:45 a.m. and was seen by Dr. Kendrick at 7:01 a.m. Dr. Kendrick diagnosed Mr. Leblanc with aspiration pneumonia for which an antibiotic, fluids, and breathing aids were administered. Dr. Kendrick arranged for Mr. Leblanc's admission to the hospital for further treatment by contacting the physicians of the LSU Family Practice Service.[2] Mr. Leblanc's care was assumed by the physicians of the LSU Family Practice Service at 8:51 a.m.; however, Mr. Leblanc physically remained in the emergency department of RRMC awaiting an available hospital bed. Mr. Leblanc was moved to a medicine floor of the hospital at 3:50 p.m., after

---

[1]At the time of his death, Mr. Leblanc was a thirty-year-old partial quadriplegic, who was significantly impaired as a result of multiple birth defects and a resident of Pinecrest Supports and Services Center (Pinecrest), formerly Pinecrest Developmental Center, in Pineville, Louisiana.

[2]According to hospital policy, all Pinecrest residents were admitted through the LSU Family Practice Service.

which he was moved to the intensive care unit. Mr. Leblanc expired that evening at 6:45 p.m.

Mrs. Jordan filed a complaint of medical malpractice against Dr. Kendrick with the Louisiana Patients' Compensation Fund, alleging that he failed to properly diagnose and treat Mr. Leblanc while he physically remained in the emergency department of RRMC on March 25, 2008. On April 12, 2010, a medical review panel unanimously rejected Mrs. Jordan's claims and determined that Dr. Kendrick met the applicable standard of care in his treatment of Mr. Leblanc. Thereafter, on July 9, 2010, Mrs. Jordan instituted the present lawsuit alleging that Dr. Kendrick, through his acts and omissions, failed to meet the degree of care ordinarily exercised by emergency room physicians in his treatment of Mr. Leblanc and that this failure was a significant, contributing factor in Mr. Leblanc's demise.

A jury trial was held from August 7, 2013, through August 10, 2013, wherein the jury returned a verdict in favor of Dr. Kendrick. Specifically, in answer to the first question on the Jury Verdict Form: "Did Robert Kendrick, M.D., violate any applicable medical standard with regards to the care and treatment that he provided, or should have provided to Michael [Leblanc]?" the jury responded, "NO." Judgment in accordance with the jury verdict was signed by the trial court on September 13, 2013.

On September 20, 2013, Mrs. Jordan filed a Motion for Judgment Notwithstanding the Verdict (JNOV) and, Alternatively, Motion for New Trial (MNT). Following a hearing on October 21, 2013, Mrs. Jordan's motions were

2

denied. Judgment in accordance with the trial court's ruling was signed on November 7, 2013. Mrs. Jordan appeals.[3]

## SPECIFICATIONS OF ERROR

### *Errors of Law*

Mrs. Jordan assigns three errors, which she contends are errors of law made by the trial court, as follows:

I.    The trial court erred in refusing to allow Dr. Sheldon Kottle to testify on rebuttal.

II.   The trial court erred in excluding the Rapides Regional antibiotic protocol that had been identified and discussed by Dr. Alan Fortier, one of the defense witnesses.

III.  The trial court erred in permitting Dr. Eustis [sic] Edwards to continue testifying after he willingly disobeyed the court's order precluding any testimony or evidence suggesting third party fault of the nursing staff or of the LSU family practice physicians.

> "Appellate review of a question of law is simply a decision as to whether the [trial] court's decision is legally correct or incorrect." *Jim Walter Homes, Inc. v. Jessen*, 98-1685, p. 5 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 702 (citing *Ducote v. City of Alexandria*, 95-1269 (La.App. 3 Cir. 7/17/96), 677 So.2d 1118). "If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." *Id.* (citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983)). If an appellate court finds that a reversible error of law was made by the trial court, it must review the facts *de novo* and render a judgment on the merits. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

*Watkins v. Lake Charles Mem'l Hosp.*, 12-1320, pp. 6-7 (La.App. 3 Cir. 4/17/13), 114 So.3d 503, 507, *aff'd*, 13-1137 (La. 3/25/14), 144 So.3d 944.

---

[3]The Motion for Appeal filed on November 15, 2013, declares Mrs. Jordan's intent to appeal both the September 13, 2013 Judgment (jury verdict) and the November 7, 2013 Judgment (JNOV/MNT); however, the appeal filed herein presents arguments relative only to the September 13, 2013 Judgment and does not address the denial of the motions for JNOV and MNT; therefore, the failure to address these issues constitutes an abandonment thereof pursuant to Uniform Rules—Courts of Appeal, Rule 2–12.4.

Mrs. Jordan's first and second assignments of error are intertwined. Mrs. Jordan argues that the trial court committed legal errors when: (1) it refused to allow Dr. Kottle to testify as her rebuttal witness; and, (2) it excluded the RRMC antibiotic protocol identified and discussed during the testimony of Dr. Fortier, a witness called by Dr. Kendrick.

Dr. Fortier, an LSU Family Practice Service physician involved with Mr. Leblanc's care, testified by video deposition and mentioned the antibiotic protocol promulgated by RRMC. Said antibiotic protocol was "attached" to Dr. Fortier's deposition; however, when Dr. Kendrick offered Dr. Fortier's testimony at trial, the antibiotic protocol was not made a part of his evidentiary offering. Mrs. Jordan moved to introduce the RRMC antibiotic protocol into evidence, and Dr. Kendrick objected, arguing that the document, an unauthenticated copy of the purported RRMC antibiotic protocol, was hearsay. Dr. Kendrick further argued that Mrs. Jordan had, in pre-trial pleadings, also moved for its exclusion from evidence on the basis of it being inadmissible hearsay. The trial court agreed, and the RRMC antibiotic protocol was not received into evidence.

Mrs. Jordan attempted to call Dr. Kottle on rebuttal. Dr. Kendrick objected, arguing that Dr. Kottle was never named in discovery as a prospective witness and that he did not meet the definition of a rebuttal witness since he was being called by Mrs. Jordan to elicit testimony relative to the RRMC antibiotic protocol, a document the trial court previously ruled was inadmissible and was not received into evidence.

In her brief, Mrs. Jordan argues that Dr. Fortier's deposition "raised, <u>for the first time</u>, the existence of specific antibiotic protocols that had been promulgated

4

by [RRMC] and were applicable to the care and treatment provided to [Mr.] Leblanc by both Dr. Kendrick and the LSU [F]amily [P]ractice [Serivce] physicians." Mrs. Jordan further elaborates:

> [Dr. Kottle's] testimony was being offered both to rebut any number of statements by defense witnesses and specifically to confirm the accuracy of the medical records regarding [Mr.] Leblanc's diagnosis of sepsis, septic shock[,] and dehydration and to rebut Dr. Kendrick's testimony that the antibiotic therapy that he had instituted complied with applicable medical standards. Dr. Kottle was prepared not only to explain the significance of the [RRMC] antibiotic protocols but also to correlate those standards with universally accepted antibiotic protocols promulgated by the American Thoracic Society regarding proper medical management of these particular diagnoses.

Dr. Kendrick disputes that Dr. Fortier's testimony was surprising to Mrs. Jordan since his deposition was taken several weeks prior to trial. Dr. Kendrick also alleges that Mrs. Jordan named Dr. Fortier in discovery as a prospective expert witness for trial and "is asking this [c]ourt to reverse a jury finding on the basis that the plaintiff was not allowed the chance to present opinion testimony to rebut fact testimony of one of her own listed expert witnesses." Finally, Dr. Kendrick argues that Mrs. Jordan wanted Dr. Kottle to address the specific content of the RRMC antibiotic protocol; however, since it was ruled inadmissible by the trial court and not received into evidence, "there was no need to allow [her] the extraordinary benefit of calling an unidentified expert to rebut fact testimony." The trial court concluded that Dr. Kottle's testimony was being offered by Mrs. Jordan as direct evidence of the issue being litigated, not as rebuttal or impeachment.

In *Waste Management of La., LLC v. Tadlock Pipe & Equipment, Inc.*, 04-1151 (La.App. 3 Cir. 12/8/04), 889 So.2d 457, *writ denied*, 05-14 (La. 3/18/05), 896 So.2d 1005, the plaintiff sought to call a witness not named in discovery as a

5

prospective witness and who the plaintiff argued was being called as an impeachment and a rebuttal witness. This court upheld the trial court's exclusion of the plaintiff's witness declaring:

> A trial judge has great discretion in conducting a trial. The judge is required to do so in an orderly, expeditious manner and to control proceedings so that justice is done. [La.Code Civ.P.] art. 1631; *Pino v. Gauthier*, 633 So.2d 638, 648 (La.App. 1st Cir.1993), *writs denied*, 94-0243 and 94-0260 (La.3/18/94), 634 So.2d 858 and 859; *Hurts v. Woodis*, 95-2166 (La.App. 1st Cir.6/28/96), 676 So.2d 1166, 1174. The judge's discretion includes the admissibility of a witness's testimony. *Combs v. Hartford Ins.* Co., 544 So.2d 583, 586 (La.App. 1st Cir.), *writ denied*, 550 So.2d 630 (La.1989). It is only upon a showing of a gross abuse of discretion that appellate courts have intervened. *Pino*, 633 So.2d at 648.

*Id*. at 460 (quoting *Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. P'ship*, 01-2812, pp. 7-8 (La.App. 1 Cir. 12/30/02), 839 So.2d 82, 91, *writ denied*, 03-306 (La. 4/4/03), 840 So.2d 1219). Further, in *Freeland v. Bourgeois*, 06-932, p. 20 (La.App. 3 Cir. 1/24/07), 950 So.2d 100, 114, *writ denied*, 07-409 (La. 4/5/07), 954 So.2d 144 (quoting *Palace*, 839 So.2d at 91), this court stated with regard to the trial court's discretion:

> If a party objects to the offered testimony of a witness not listed on the pre-trial order, a trial judge has great discretion in deciding whether to receive or refuse the testimony objected to on the grounds of failure to abide by the rules, but any doubt must be resolved in favor of receiving the information. *Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Co.*, 555 So.2d 568, 576 (La.App. 1st Cir.1989), *writ denied*, 558 So.2d 583 (La.1990); *Curry v. Johnson*, 590 So.2d 1213, 1216 (La.App. 1st Cir.1991).

We find that the trial court did not err in excluding from evidence the document "attached" to Dr. Fortier's deposition, which was purportedly an antibiotic protocol promulgated by RRMC. "Before a court may admit the evidence, there has to be evidence 'sufficient to support a finding that the matter in question is what its proponent claims,' i.e., the evidence must be authenticated.

La.Code Evid.art. 901." *Ducote v. Union Pac. R.R. Co.*, 08-1208, p. 4 (La.App. 3 Cir. 2/4/09), 4 So.3d 240, 244, *writ denied*, 09-940 (La. 6/5/09), 9 So.3d 877. "The authentication requirement is a condition precedent to the *admissibility*." *Id*. at 245. Mrs. Jordan offered an unauthenticated copy of a document, purportedly the RRMC antibiotic protocol. The trial court was correct to exclude it from evidence as inadmissible hearsay.

We also find that the trial court did not abuse its discretion in refusing to allow Mrs. Jordan to call Dr. Kottle on rebuttal. "Rebuttal evidence by a plaintiff is limited to countering that evidence raised by a defendant during their case in chief. *Roberts v. Owens-Corning Fiberglass Corp.*, 03-248 (La.App. 1 Cir. 4/2/04), 878 So.2d 631[, *writ denied*, 04-1834 (La. 12/17/04), 888 So.2d 863]; La.Code Evid. art. 611(E)." *Waste Mgmt.*, 889 So.2d 460-61. There being no RRMC antibiotic protocol in evidence, the trial court did not abuse its discretion in refusing to allow Dr. Kottle to testify at trial.

Dr. Eustace L. Edwards, III, an expert in the field of emergency medicine, served as a member of the medical review panel[4] that exonerated Dr. Kendrick. Called by Dr. Kendrick to testify at trial, Dr. Edwards stated that the panel members reviewed the care provided to Mr. Leblanc by Dr. Kendrick and others. According to Mrs. Jordan, the trial court allowed the jury to be tainted by Dr. Edwards' testimony because he referred to the fault of others when Dr. Kendrick had judicially confessed that no third party fault existed. As a result thereby, she moved to strike Dr. Edwards' testimony. The trial court denied her motion to strike.

---

[4]Dr. Edwards, Dr. Thomas Fontenot, and Dr. William McBride, III, constituted the medical review panel.

Again, the trial court has great discretion in conducting the trial and controlling its proceedings. Having reviewed the exchange upon which Mrs. Jordan relies, Dr. Edwards acknowledged that the role of the medical review panel was to review the care provided to Mr. Leblanc by Dr. Kendrick and other health care providers. Dr. Edwards did not suggest that other health care providers, besides Dr. Kendrick, were negligent. Thus, we do not find that the jury was tainted by Dr. Edwards' testimony.

Based upon our finding of there being no legal errors made by the trial court, we review the remainder of Mrs. Jordan's assigned errors, i.e., errors of fact, under the manifest error standard of review, as discussed below. The trial court did not abuse its discretion in refusing to strike Dr. Edwards' testimony.

***Errors of Fact***

Mrs. Jordan assigns three errors, which she contends are errors of fact made by the jury, as follows:

IV.    The jury erred in failing to conclude that Dr. Kendrick violated applicable standards of care by failing to diagnose Michael Leblanc's Systemic Inflammatory Response Syndrome (SIRS) and by failing to institute appropriate therapeutic measures.

V.    The jury erred in failing to conclude that Dr. Kendrick violated applicable standards of care by failing to administer adequate fluids for Michael Leblanc's dehydration.

VI.    The jury erred in failing to conclude that Dr. Kendrick violated applicable standards of care by failing to evaluate the patient for approximately 6 hours in the emergency department and by failing to timely transfer him to the ICU.

"A fact finder's determinations regarding whether a plaintiff proved the elements of the burden of proof of La.R.S. 9:2794 are findings of fact. *Salvant v. State*, 05-2126 (La. 7/6/06), 935 So.2d 646." *Doyle v. Ramos*, 13-1143, p. 5

8

(La.App. 3 Cir. 3/5/14), 134 So.3d 92, 96. As such, we review the jury's findings of fact using the clearly wrong or manifest error standard of review. *Id*.

> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. [*Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989).] The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id*.; *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*. However, where documents or objective evidence so contradict the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Rosell, supra* at 844-45. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or two or more witnesses, that findings can virtually never be manifestly erroneous or clearly wrong. *Id*.

*Salvant*, 935 So.2d at 650.

Louisiana Revised Statutes 9:2794 sets forth the burden of proof for medical malpractice actions, in pertinent part, as follows:

> A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., . . . the plaintiff shall have the burden of proving:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

A plaintiff in a medical malpractice action must establish the negligence of a physician by a preponderance of the evidence. La.R.S. 9:2794(C).

Mrs. Jordan, pursuant to La.R.S. 9:2794 and the jurisprudence interpreting said statute, had the burden of proving, by a preponderance of the evidence, the following: (1) the standard of care for treating a patient such as Mr. Leblanc; (2) that Dr. Kendrick breached that standard of care; and (3) that the breach caused Mr. Leblanc's death. *See also Browning v. W. Calcasieu Cameron Hosp.*, 03-332 (La.App. 3 Cir. 11/12/03), 865 So.2d 795, *writ denied*, 03-3354 (La. 2/13/04), 867 So.2d 691.

Mrs. Jordan asserts that Mr. Leblanc died of dehydration and sepsis. The final autopsy report states Mr. Leblanc's death was "natural" and caused by "aspiration of gastric contents, complicating mental retardation, and seizure disorder." Mrs. Jordan seemingly disputes the medical records, the findings of the autopsy, and the opinion of the medical review panel.

The medical review panel's opinion was introduced into evidence by Mrs. Jordan, the most relevant portion of which provides:

> The evidence does not support the conclusion that Dr. Robert Kendrick (Emergency Medicine) failed to comply with acceptable standard of care for an emergency medicine physician in the treatment of Michael [Leblanc]. Once triaged by the nursing staff, Dr. Kendrick examined and evaluated Mr. [Leblanc] within a short time following presentation to the Emergency [M]edicine Department of Rapides Regional Medical Center. Dr. Kendrick ordered appropriate diagnostic tests. He and the staff reviewed the patient's medical history as provided by the caregivers. Dr. Kendrick was aware of Mr. [Leblanc]'s multiple aspirations, surgeries, Nissan fundoplication, [and] feeding tube. Dr. Kendrick recognized Mr. [Leblanc] was tachycardic and most likely dehydrated. The patient's O2 rates were low upon presentation. Dr. Kendrick appropriately ordered oxygen to

raise saturation rates, which occurred. In the [E]mergency [R]oom, Mr. [Leblanc] received IV fluids. Upon receipt of test results, Dr. Kendrick diagnosed aspiration pneumonia and ordered antibiotic regimen. In fact, the antibiotics were expanded to provide broad coverage to Mr. [Leblanc]. The CBC test results initially indicated 41% bands. However, a repeat CBC negated the original result. Dr. Kendrick diagnosed aspiration pneumonia; considered and ruled our [sic] sepsis; provided oxygenation, antibiotic coverage, IV fluids, and stabilized Mr. [Leblanc] while in the Emergency Room. In addition, Dr. Kendrick sought admission of the patient to the LSU Family Practice floor within the hospital. At the time of transfer to family medicine physicians, the patient was stable.

The allegations made against Dr. Kendrick are without merit. In fact, Dr. Kendrick did comply with the standards of care raised against him. The panel finds no deviation of standard of care by Dr. Robert Kendrick.

In summary, the diagnosis of aspiration pneumonia was appropriate. Diagnostic tests were ordered and repeated when necessary throughout the emergency room and hospital care. Appropriate antibiotics were ordered initially and later added. The dosages and coverage were appropriate. The cultures for Mr. [Leblanc] returned negative, indicating Mr. [Leblanc]'s condition was due to inflammation, not infection and sepsis. Placement initially of two IV lines is not standard of care. When needed, a PICC line was timely and appropriately placed. Intubation of Mr. [Leblanc] initially was not warranted as he responded to oxygen, with his O2 sats improving. Mr. [Leblanc] was properly hydrated. The administration of Lasix was appropriate after receipt of test results indicating the patient may have heart failure as well as being helpful for pneumonia. The [. . .] physician who cared for Mr. [Leblanc] attended to the patient quickly, thoroughly and appropriately. The records do not indicate a need for consultation of infectious disease. Unfortunately, the condition of Mr. [Leblanc] was not a diagnostic dilemma, but a therapeutic problem.

Mrs. Jordan sought to discredit the panel's decision that Dr. Kendrick did not deviate from the applicable standard of care by arguing that the evidence before the panel was incomplete, inaccurate, or both.

In support of her position, Mrs. Jordan presented Dr. Walter Simmons as an expert in the fields of emergency medicine and quality control of medical services. According to Dr. Simmons, Dr. Kendrick violated the standard of care by not

recognizing when Mr. Leblanc first arrived that he was excessively dehydrated and had a significant respiratory rate. Dr. Simmons listed Dr. Kendrick's alleged breaches as: (1) a failure to treat; (2) a failure to assess; and, (3) a failure to consult appropriate physicians. According to Dr. Simmons, Mr. Leblanc's demise was a result of Dr. Kendrick's failure to administer appropriate fluids resulting in dehydration and his failure to administer appropriate antibiotics, resulting in systemic inflammatory response syndrome (SIRS) and sepsis. Dr. Simmons found fault with Dr. Kendrick's administration of 500 milligrams of the antibiotic Levaquin in his treatment of Mr. Leblanc. Instead, Dr. Simmons opined that Dr. Kendrick should have administered 750 milligrams of Levaquin and a second antibiotic, either Vancomycin or Clindomycin, to Mr. Leblanc. Finally, Dr. Simmons was critical of the care Mr. Leblanc received the entire time he physically remained in the emergency department, regardless of that fact that the medical records reflect Mr. Leblanc's care was assumed by the physicians of the LSU Family Practice Service at 8:51 a.m.

Dr. Robert Anderson was called to testify by Dr. Kendrick and was accepted as an expert in the field of emergency medicine. Dr. Anderson explained that the duty of an emergency room physician is to get treatment started and get the patient admitted into the hospital for treatment by another doctor if necessary. According to Dr. Anderson, Dr. Kendrick's care of Mr. Leblanc was reasonable and appropriate. Dr. Anderson also testified that at 8:51 a.m., Mr. Leblanc was no longer Dr. Kendrick's patient.

As a witness for Dr. Kendrick, Dr. Edwards refuted the accusation that the evidence before the medical review panel was erroneous and that its opinion was flawed. According to Dr. Edwards, the medical review panel based its decision

upon a complete, precise, and accurate record of the treatment received by Mr. Leblanc. Dr. Edwards was unequivocal in his opinion that Dr. Kendrick met the applicable standard of care in his treatment of Mr. Leblanc.

Dr. Kendrick testified that when Mr. Leblanc presented to the emergency room, he was diagnosed as suffering from aspiration pneumonia. He administered an antibiotic, fluids, and oxygen, which improved Mr. Leblanc's condition. Because he felt that Mr. Leblanc needed continuing treatment, Dr. Kendrick contacted a physician with the LSU Family Practice Service and transferred Mr. Leblanc's care accordingly.

This court has often held that the fact finder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. *See Stobart*, 617 So.2d 880. We are further cognizant that when "expert witnesses differ, it is for the trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error." *Smith v. Cappaert Manufactured Housing, Inc.*, 11-1464, p. 11 (La.App. 3 Cir. 4/10/12), 89 So.3d 1234, 1242-43, *writs denied*, 12-1418 (La. 10/8/12), 98 So.3d 857, and 12-1516 (La. 10/12/12), 98 So.3d 871. The jury was presented with alternative permissible views of the evidence of what occurred during Dr. Kendrick's treatment of Mr. Leblanc. The jury found that Dr. Kendrick had not violated any applicable medical standard with regards to the diagnosis, care, and treatment that he provided, or should have provided to Mr. Leblanc, evidently adopting the views expressed by Dr. Kendrick's experts. The jury decided which experts were credible, and its adoption of those opinions cannot be considered manifestly erroneous. Therefore, we find Mrs. Jordan's alleged errors of fact to be without merit.

**DECREE**

For the foregoing reasons, we affirm the trial court judgment pursuant to jury verdict and the trial court's evidentiary rulings. Costs are assessed to Plaintiff/Appellant, Connie Jordan.

**AFFIRMED.**